Frederick W. MONCRIEF, Appellant,

v.

LEXINGTON HERALD–LEADER CO.

No. 85–6153.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1986.

Decided Dec. 16, 1986.

Joel P. Bennett, Washington, D.C., for appellant.

N. Frank Wiggins, with whom Richard M. Schmidt, Jr. and Ian D. Volner, Washington, D.C., were on brief for appellee.

Before BORK and BUCKLEY, Circuit Judges, and HAROLD H. GREENE,* District Judge.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

The issue presented in this appeal is whether a nonresident newspaper publisher that sends an allegedly libelous article into the District of Columbia is thereby within the reach of the District of Columbia's "long-arm statute," D.C.Code Ann. § 13–423 (1981),[1] and thus subject to the court's jurisdiction. The district court held that the jurisdictional statute did not reach the publisher. We think that conclusion correct and, therefore, affirm the judgment of the district court dismissing the action for lack of personal jurisdiction.

## I.

Appellant, Frederick W. Moncrief, is an attorney employed by the Office of the Solicitor of the United States Department of Labor in Washington, D.C. Appellee, Lexington Herald-Leader Co. (the "Herald-Leader") is the owner and publisher of a newspaper. The Herald-Leader, a Kentucky corporation, maintains an office in the District of Columbia and employs one or more reporters at that office for the

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1982).

1. The District of Columbia's long-arm statute provides in relevant part:

    (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

    (1) transacting any business in the District of Columbia;

    ....

    (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

    (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

    ....

    (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

    D.C.Code Ann. § 13–423 (1981).

purpose of gathering news. The Herald-Leader also has 22 paid mail subscriptions in the District of Columbia and receives approximately $3,000 per year in revenue from these subscriptions.

On May 24, 1984, the appellant filed a complaint against the Herald-Leader and Michael York, a reporter employed by the Herald-Leader at its Washington office.[2] The appellant alleged that the Herald-Leader published an article written by York which contained a statement about the appellant that was false, defamatory, and malicious.[3]

The Herald-Leader filed a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for lack of jurisdiction over the person and for inadequate service of process. In its response to the motion, the appellant argued that the court had jurisdiction pursuant to D.C.Code Ann. § 13–423(a)(3) (1981), which confers jurisdiction over a person who causes "tortious injury in the District of Columbia by an act or omission in the District of Columbia" or pursuant to section 13–423(a)(4), which confers jurisdiction over a person who commits an act outside the District causing injury in the District when that person also "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the District of Columbia."[4]

The district court granted the motion to dismiss. *Moncrief v. Lexington Herald-Leader Co.*, 631 F.Supp. 772 (D.D.C.1985).

2. The appellant subsequently moved to dismiss the action as to the defendant Michael York. The district court granted the motion and York is not a party to this appeal.

3. The challenged statement is as follows:
   And in the second incident, Kennedy said, the department lawyer involved, Fred Moncrief, was the one guilty of improper conduct. "He is a lazy lawyer, and I'm not surprised that he has nothing better to do than to bring this sort of complaint," Kennedy said. "I've been in cases in which he has appeared totally unprepared and even argued positions that hurt his own case."

The court held that section 13–423(a)(3) did not confer jurisdiction over the defendant because the "act" causing the alleged injury[5] did not occur in the District of Columbia: "In this case, the libelous article was printed, and the newspapers were mailed, outside of the District of Columbia. The fact that they were mailed into the District of Columbia and caused injury here is not ... sufficient.... As no act occurred within the District of Columbia, this Court cannot exercise jurisdiction." 631 F.Supp. at 774. The district court held that section 13–423(a)(4) did not confer jurisdiction because the only alleged "persistent course of conduct" by the Herald-Leader in the District is the maintenance of an office for newsgathering and the "newsgathering exception" to paragraph (a)(4) precludes the assertion of jurisdiction solely on the basis of that activity. *Id.* This appeal followed.

## II.

Any consideration of the reach of section 13–423(a)(3) must begin with a review of this court's comprehensive discussion of that provision in *Margoles v. Johns*, 483 F.2d 1212 (D.C.Cir.1973). In *Margoles*, the court held that this paragraph of the long-arm statute did not confer jurisdiction over a newspaper reporter who telephoned from her Wisconsin office to a congressman's office in the District of Columbia and " 'maliciously spoke of and concerning' the appellant with false and defamatory words." *Id.* at 1213.

The court concluded that the District's long-arm statute was one of "moderate

Lexington Herald-Leader, May 27, 1984, at 1, Attachment A to Plaintiff's Opposition to Defendant's Motion to Dismiss.

4. Appellant has not contended that the Herald-Leader "transacts business" in the District of Columbia so that jurisdiction exists pursuant to paragraph (a)(1) of the long-arm statute. Nor does appellant argue that jurisdiction exists pursuant to paragraph (a)(4) because appellant "derived substantial revenue from ... the District of Columbia."

5. The Herald-Leader concedes that the alleged injury occurred in the District of Columbia. Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss at 3.

reach," and noted that Congress had chosen the most restrictive of three possible statutes by adopting the statutory language "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia" rather than language which bases jurisdiction upon the "commission of a tortious act" within the state, or upon the commission of a tort "in whole or in part" in the state. The court concluded that this choice reflected an intention to "separate 'act' from 'injury,' granting jurisdiction over non-residents who by their out-of-state acts or omissions cause tortious injury within the state only where additional minimum contacts with the state are also present." 483 F.2d at 1216.

The court then rejected the appellant's contention that by making a telephone call the appellee had "project[ed] her presence" into the District and had thus "acted" therein:

> The "act," of course, is the act of the alleged tortfeasor—here that act, uttering defamatory statements, occurred in Wisconsin.... The additional facts that other third party acts were necessary to consummate the tort, or that the injury itself took place within the District, cannot under our reading of the [statute] grant jurisdiction that is otherwise lacking.

483 F.2d at 1218. *Accord Reuber v. United States,* 750 F.2d 1039, 1049 (D.C.Cir. 1984); *Tavoulareas v. Comnas,* 720 F.2d 192, 194 (D.C.Cir.1983).

Based upon this analysis, the district court here concluded that section 13–

423(a)(3) did not confer jurisdiction over the Herald-Leader's actions because the "act" which gave rise to the injury—the printing and mailing of the newspaper—occurred outside the District. 631 F.Supp. at 774. In addition to *Margoles,* the district court relied upon two cases interpreting the reach of the Virginia long-arm statute in similar situations.[6] In each case, the statute was held not to confer jurisdiction over a defendant who mailed allegedly libelous materials into the state. *See Davis v. Costa-Gavras,* 580 F.Supp. 1082, 1087 (S.D.N.Y.1984) (Virginia's long-arm statute does not contemplate jurisdiction based on the act of sending allegedly libelous books and video cassettes into the state); *St. Clair v. Righter,* 250 F.Supp. 148, 151 (W.D.Va. 1966) (The act of writing and mailing letters outside Virginia does not confer jurisdiction.).

Appellant challenges this finding on two grounds. First, appellant argues that the finding that the "act" occurred outside the District is incorrect because the Supreme Court has held that "[t]he tort of libel is generally held to occur wherever the offending material is circulated." Brief of Appellant at 6, *quoting Keeton v. Hustler Magazine,* 465 U.S. 770, 777, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984).

Second, appellant argues that the three cases relied upon by the district court can be distinguished from this case because the Herald-Leader has more "contacts" with the District than the defendants had with the jurisdictions in those cases.[7] Thus, appellant argues, because the District of Columbia long-arm statute extends "to the

---

6. Reliance upon cases construing the Virginia statute is appropriate because "Congress' overall intent was to provide the District's courts, to the greatest extent possible, with essentially identical long-arm jurisdiction as was then available in Maryland and Virginia." *Margoles,* 483 F.2d at 1215–16.

7. The contacts cited by appellant include:
Appellant's career as an attorney for the federal government centers in Washington, D.C., where his agency's headquarters are located. The article was drawn from an interview conducted in Washington, D.C., with a Washington, D.C., resident and was written in

Washington, D.C. The brunt of the injury, in particular the damage to appellants' professional reputation, occurred in Washington, D.C. The appellee published an article containing remarks which were libelous *per se,* which it knew had a potentially harmful impact on the appellant and with knowledge that the impact would occur in Washington, D.C. Further, the appellee knowingly circulates newspapers in Washington, D.C., and the "act" of libel occurs wherever the offending material is circulated.
Brief of Appellant at 7–8.

utmost limits of due process," these additional contacts are sufficient to confer jurisdiction. Brief of Appellant at 7–9, *citing Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Blue Ridge Bank v. Veribanc, Inc.,* 755 F.2d 371 (4th Cir.1985).

■ Appellant's first argument fails to recognize that the District of Columbia has chosen to distinguish between the act of the defendant and the injury it causes while the long-arm statute at issue in *Keeton* does not distinguish between "act" and "injury" but instead confers jurisdiction if a defendant "commits a tort in whole or in part in New Hampshire," *see* N.H.Rev.Stat. Ann. § 300:14 (1977). Since the Court in *Keeton* did not have occasion to discuss where the act giving rise to the injury had occurred, the case is inapplicable to the issue presented here.

Appellant's second argument misconstrues Congress' separate intent with respect to the reach of each paragraph of the long-arm statute and essentially fuses the requirements of each to create a new provision. In enacting paragraph (a)(1), which confers jurisdiction over defendants "transacting any business in the District of Columbia," Congress intended to reach to the limits of due process. *See Margoles,* 483 F.2d at 1218. Jurisdictional analysis under this section permits consideration of all contacts the defendant has with the District. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (The due process clause permits jurisdiction over a defendant in any state in which the defendant has "certain minimum contacts … such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'") (citation omitted). Paragraph (a)(3), by contrast, is "a precise and intentionally restricted tort section," *Margoles,* 483 F.2d at 1219, which "stops short of the outer limits of due process,"

*Davis,* 580 F.Supp. at 1088, and which confers jurisdiction only over a defendant who commits an act in the District which causes an injury in the District, without regard to any other contacts. Similarly, paragraph (a)(4) permits jurisdiction over a defendant who commits an act outside the District which causes injury in the District only when the defendant engages in some persistent course of conduct or derives substantial revenue from the District.[8]

■ For this reason, we cannot accept appellant's argument that paragraph (a)(3) confers jurisdiction over a defendant, without regard to where the "act" or the "injury" occurred, whenever that defendant has certain contacts with the District. To do so would be contrary to the plain language and intent of paragraph (a)(3), and would render paragraph (a)(1), as well as paragraph (a)(4), superfluous. Thus, we agree with the district court that paragraph (a)(3) does not confer jurisdiction.

### III.

■ We also agree with the district court's conclusion that it does not have jurisdiction pursuant to section 13–423 (a)(4), since the defendant does not "engage[ ] in any … persistent course of conduct in the District." Because appellant argued that the Herald-Leader's only persistent course of conduct in the District is the maintenance of an office there for the purpose of gathering news, the district court concluded that the "newsgathering exception" to the District's long-arm statute applied to the Herald-Leader's activity and, therefore, paragraph (a)(4) did not confer jurisdiction.

Appellant argues that the district court erred because the "newsgathering exception" does not apply to the type of article at issue here but is limited to "news of national interest." Brief of Appellant at 9–10. Appellant also questions the vitality of the exception in light of the Supreme

---

8. It is obvious that a state is not required to extend the jurisdiction of its courts to the limit permitted by the Constitution. *See Margoles,* 483 F.2d at 1220 ("It is axiomatic … that the due process clause is utilized as a limit upon a state's power and not as a mandate for the exercise of that power.").

Court's statement in *Calder v. Jones*, 465 U.S. at 790, 104 S.Ct. at 1487, that it "reject[s] the suggestion that First Amendment concerns enter into the jurisdictional analysis." Brief of Appellant at 10–11.

The "newsgathering exception" to paragraph (a)(4) of the long-arm statute was announced by this court in *Neely v. Philadelphia Inquirer Co.*, 62 F.2d 873 (D.C.Cir. 1932), and provides that "the mere collection of news material here for use in subsequent publication elsewhere ... is not a doing of business here, within the meaning of the statute." *Id.* at 875; *see also Layne v. Tribune Co.*, 71 F.2d 223 (D.C.Cir.), *cert. denied*, 293 U.S. 572, 55 S.Ct. 83, 79 L.Ed. 670 (1934).[9] The policy considerations underlying the holding in *Neely* were stated by the court as follows:

> As the seat of national government, Washington is the source of such news of national importance, which makes it desirable in the public interest that many newspapers should maintain vigilant correspondents here. If the employment of a Washington correspondent, the announcement of his address, and the payment of his office rent, subjects a nonresident newspaper corporation to legal process in Washington for matter appearing in its paper at home, it would bring in nearly every important newspaper in the nation, and many foreign publishing corporations, which in our opinion the present statute does not do.

62 F.2d at 875. In *Founding Church of Scientology v. Verlag*, 536 F.2d 429 (D.C. Cir.1976), this court interpreted the quoted language and concluded that "what is being protected by the newsgathering exemption is the right of *subscribers* within the area of immediate circulation of a newspaper or magazine to receive news of national interest which must be gathered in the District of Columbia." *Id.* at 434. Appellant argues that this statement renders the exception inapplicable to the facts of this case because the exception is applicable only to articles covering news of national importance. This argument is incorrect. The test appellant proposes would enmire courts in the hopelessly subjective task of deciding which news stories, or parts of them, had "national importance" and which did not. The exception is not aimed at the type of news ultimately published by a nonresident newspaper; it is intended to protect a newspaper whose only persistent course of conduct in the District is the maintenance of an office there for gathering news from being subject to the jurisdiction of the District's courts and, ultimately, to protect the subscribers of a newspaper that might otherwise choose not to gather news in the District because of the potential assertion of jurisdiction. The type of news at issue in a particular lawsuit simply is not relevant.

9. Although the court in *Neely* was applying the District's previous long-arm statute, D.C.Code Ann. § 13–334 (1967), "which granted jurisdiction over persons 'doing business' in the District—a concept requiring a more 'systematic and continuous course of conduct' for jurisdictional reach than the 'transacting any business' standard in the present § 13–423(a)(1)," *Rose v. Silver*, 394 A.2d 1368, 1373 (D.C.App.1978), this court has held that the holding in *Neely* has survived both the expansion of the "doing business" concept by the Supreme Court's decision in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *see Bulletin Co. v. Origoni*, 387 F.2d 240 (D.C.Cir.) (reversing district court's holding that *Neely* has been overruled *sub silentio* by "the changes in the principle as to what constitutes doing business with a state ... and the adoption of a much more liberal doctrine" in *International Shoe*), *cert. denied*, 389 U.S. 928, 88 S.Ct. 287, 19 L.Ed.2d 278 (1967), *rev'g Origoni v. Bulletin Co.*, 258 F.Supp. 359, 361 (D.D.C.1966), and the District's revision of the long-arm statute. *See Margoles*, 483 F.2d at 1222 ("We find nothing in the legislative history or language of the [statute] ... to indicate that Congress sought to reverse the *Neely* precedent ... when it adopted the new long-arm statute.").

This court has also held that the reasons underlying the "newsgathering exception" apply equally to the "persistent course of conduct" requirement in paragraph (a)(4). *See Margoles*, 483 F.2d at 1221–22; *see also Abkar v. New York Magazine Co.*, 490 F.Supp. 60, 64 (D.D.C.1980) ("[F]or purposes of subjecting a news organization to personal jurisdiction for acts or omissions outside the District under § (a)(4), the mere act of newsgathering in the District is not to be considered as doing or soliciting business or engaging in a persistent course of conduct as those terms are used in § (a)(4).").

Appellant's second argument is essentially an invitation to the court to overrule the *Neely* decision on the basis of language in a Supreme Court decision addressing a clearly dissimilar situation. We decline to do so. In *Calder v. Jones,* the respondent brought suit in a California court claiming that the nonresident petitioners had written a libelous article that was sent into the State of California. The lower court concluded that California's long-arm statute, which permits jurisdiction over a nonresident defendant to the extent permitted by state and federal constitutions, did not confer jurisdiction over petitioners because, although the actions of petitioners would ordinarily be sufficient to confer jurisdiction, "special solicitude was necessary because of the potential 'chilling effect' on reporters and editors which would result from requiring them to appear in remote jurisdictions to answer for the content of articles upon which they worked." 465 U.S. at 786, 104 S.Ct. at 1485. The California Court of Appeals rejected the lower court's first amendment analysis and reversed, finding that the petitioners were subject to the jurisdiction of the court because "petitioners intended to and did, cause tortious injury ... in California." *Id.* at 787, 104 S.Ct. at 1485.

The Supreme Court affirmed the decision of the court of appeals, finding that petitioners' contacts with the State were sufficient to confer jurisdiction. 465 U.S. at 788–89, 104 S.Ct. at 1486–87. The Court rejected petitioners' suggestion that first amendment considerations should enter into the jurisdictional analysis, finding that "[t]he infusion of such considerations would needlessly complicate an already imprecise inquiry," *id.* at 790, 104 S.Ct. at 1487, and noting that the Court had "already declined in other contexts to grant special procedural protections to defendants in libel and defamation actions in addition to the constitutional protections embodied in the substantive laws." *Id.* at 790–91, 104 S.Ct. at 1488.

The critical distinction between the *Calder* case and the one before us is that in *Calder* the question was whether first amendment considerations could defeat an assertion of jurisdiction unquestionably permitted by the California statute and the due process clause. In this case, the question is one of statutory interpretation: whether the maintenance of an office in the District for the purpose of gathering news is a "persistent course of conduct" there within the meaning of those terms as used in paragraph (a)(4). Thus, unlike *Calder,* first amendment considerations are not before us and the case is not controlling.

Our conclusion that the "newsgathering exception" is not based upon first amendment considerations is supported by the *Neely* decision and subsequent interpretations of that decision. First, the court in *Neely* did not mention the first amendment. Instead, the court based its decision on the application of jurisdictional doctrine to the District's statute:

> For each case is to be considered and decided upon its own facts and circumstances, though in a general way it may be said that the business done must be of such character and extent as to warrant the inference that the foreign corporation is present by its agent in the jurisdiction of the process, and has thereby subjected itself to the laws of that jurisdiction. So a foreign corporation may be doing business of a certain kind to a considerable extent, actually and obviously, and yet not be subject to such a statute, if its activities go no further than solicitation, though somewhat elaborately organized and advertised.... While if its activities include not only solicitation but the fulfillment thereof by shipment of goods and receipt of payments, the statute shall apply.

62 F.2d at 874. Second, the court in *Neely* distinguished a case in which the court found that jurisdiction could be asserted over a nonresident publisher who maintained an office in the District, *see Ricketts v. Sun Printing & Publishing Ass'n,* 27 App.D.C. 222 (1906), on the ground that the publisher's "correspondent ... not only gathered news for the Sun and sent it to New York, but the corporation sold these

news reports to other papers, made direct delivery thereof in the Washington office, and received part payment therefor in the Washington office, where the correspondent applied such receipts in maintenance of the Washington establishment." 62 F.2d at 875. If the decision in *Neely* were based upon first amendment considerations, the case distinguished would also fall within the holding and would be beyond the court's jurisdiction.

The cases interpreting and applying the *Neely* holding have, with one exception, failed even to mention the first amendment and have interpreted the decision as based upon an interpretation of the statute and the congressional intent in enacting it. *See, e.g., Margoles,* 483 F.2d at 1221–22; *Bulletin Co. v. Origoni,* 387 F.2d 240, 241 (D.C.Cir.), *cert. denied,* 389 U.S. 928, 88 S.Ct. 287, 19 L.Ed.2d 278 (1967); *Fehlhaber Pile Co. v. Tennessee Valley Authority,* 155 F.2d 864, 865 (D.C.Cir.1946); *Mueller Brass Co. v. Alexander Milburn Co.,* 152 F.2d 142, 143 (D.C.Cir.1945); *Whitaker v. MacFadden Publications,* 105 F.2d 44, 45 (D.C.Cir.1939); *Layne v. Tribune Co.,* 71 F.2d 223, 224 (D.C.Cir.1934); *Chase v. Pan-Pacific Broadcasting, Inc.,* 617 F.Supp. 1414, 1425 (D.D.C.1985); *Abkar v. New York Magazine Co.,* 490 F.Supp. 60, 64 (D.D.C.1980); *Kaffenberger v. Kremer,* 63 F.Supp. 924, 927 (E.D.Pa.1945); *Bilbrey v. Chicago Daily News,* 57 F.Supp. 579, 580 (D.D.C.1944); *Acton v. Washington Times Co.,* 9 F.Supp. 74, 76 (D.Md.1934).

In *Fandel v. Arabian American Oil Co.,* 345 F.2d 87 (D.C.Cir.1965), this court explained the rationale of *Neely* and the decisions following it:

These cases, although embodying variously different factual circumstances, seem to us to constitute a recognition that Washington presents many business organizations with special needs for a continuous and ponderable physical presence there, which needs are not those customarily associated with strictly commercial operations; and that the purpose of Congress was not to make that presence in every case a base for the assertion of personal jurisdiction.

We are construing what a statute does, and not determining what the furthest reach of legislative power could be consistent with constitutional limitations.

*Id.* at 89; *see also Riss & Co. v. Association of Western Railways,* 159 F.Supp. 288, 292 (D.D.C.1958) ("In like manner, an out-of-town newspaper is, strictly speaking, engaged in the business of selling newspapers for profit within its circulation area, and, thus, maintaining a correspondent in Washington merely to gather the news does not constitute 'doing business' in the District of Columbia.").

■ We conclude that the newsgathering exception is not based upon first amendment considerations but is based upon an interpretation of Congress' intent with respect to what type of "business" in the District will subject a non-resident corporation to jurisdiction here. It is true that this court, on one occasion, defined the "newsgathering exception" as follows: "in minimal contact situations, the First Amendment protects newsgathering activities in the nation's capital and weighs against the assumption of personal jurisdiction over a nonresident publisher." *Founding Church of Scientology v. Verlag,* 536 F.2d 429, 433 (D.C.Cir.1976). We think this statement not binding upon us. It is not supported by the cases cited by the court or by any other precedent from this circuit. In fact, it is not supported by the court's decision in the *Verlag* case. In *Verlag,* the court held that the newsgathering exception did not protect the right of publishers to distribute their product in foreign jurisdictions:

To subject a nonresident publisher to suit in the District merely because he gathers news here for *dissemination elsewhere* would severely constrict the flow of national news to his local subscribers. Viewed this way, however, the newsgathering exception would not prohibit suits against publishers whose immediate circulation includes the District.

536 F.2d at 434 (emphasis in original). If the exception is based upon the first

amendment rights of publishers, then the particular place of publication would be irrelevant and the exception would apply to the nonresident publisher who disseminates news in the District. If, however, we apply the rationale for the exception adopted by every other case in this circuit, the decision in *Verlag* is correct. News gathering is protected because it is not the type of "business" envisioned by Congress as conferring jurisdiction. The activities of the publisher in *Verlag*—sales of magazines totalling in excess of $26,000 in a ten-month period—are not protected by the exception because this is the type of "business" contemplated by Congress and specifically codified in the "deriving substantial revenue" clause of paragraph (a)(4).

For the foregoing reasons, the judgment of the district court is

*Affirmed.*