# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 7, 2015        Decided February 12, 2016

No. 14-7070

VINCENT FORRAS AND LARRY ELLIOTT KLAYMAN,
APPELLANTS

v.

IMAM FEISAL ABDUL RAUF AND ADAM LEITMAN BAILEY,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00282)

———

*Larry Klayman* argued the cause and filed the briefs for appellants.

*Christopher G. Hoge* argued the cause and filed the brief for appellee Adam Leitman Bailey.

*Karl A. Racine*, Attorney General for the Office of the District of Columbia, *Ariel B. Levinson-Waldman*, Senior Counsel to the Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief for *amicus curiae* District of Columbia in support of appellees as to the applicability and constitutionality of the Anti-SLAPP Act.

Before: MILLETT and PILLARD, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: The question in this case is whether the United States District Court for the District of Columbia properly exercised personal jurisdiction over the Defendant, Adam Bailey, when (i) the Plaintiffs, Larry Klayman and Vincent Forras, are not District of Columbia residents; (ii) Defendant Bailey never set foot in the District in the two decades prior to the lawsuit; (iii) the lawsuit arises from allegedly defamatory statements Bailey made in a New York state court filing that (iv) were later published by a New York reporter (v) in a New York paper, and (vi) the statements concern Klayman's and Forras's roles in New York litigation concerning (vii) a controversial construction project in New York City.

The answer to that question is a straightforward "no." There is no personal jurisdiction in this case over Bailey in the District of Columbia.

**I**

This case has its genesis in a controversy surrounding the so-called "Ground Zero Mosque." In mid-2010, Imam Feisal Abdul Rauf and others in New York City sought to build an Islamic community center and mosque in lower Manhattan, a few blocks from the site of the World Trade Center attacks of September 11, 2001. *See* Michael Barbaro, *Debate Heating Up on Plans for Mosque Near Ground Zero*, N.Y. TIMES, at A1 (July 31, 2010).

On September 9, 2010, Vincent Forras, a former firefighter from South Salem, New York, filed suit in New

York Supreme Court against Imam Rauf. The lawsuit alleged that the plan to build a mosque and community center near the World Trade Center site constituted a nuisance, intentional and negligent infliction of emotional distress, and assault. Larry Klayman represented Forras in that lawsuit. Rauf, through his attorney Adam Bailey, filed a motion to dismiss the Forras complaint. His memorandum in support of that motion asserted, among other things, that (i) Forras was "a nationally recognized bigot," (ii) Forras believes "Islam equates with terrorism," and (iii) Forras has become "America's Spokesman of Bigotry." In addition, Bailey submitted an "Affirmation in Support of Motion to Dismiss" which said in relevant part:

10. As a lawyer I cannot tolerate the destruction of the American Constitution at the hands of those who had been pledged to defend it. I will not let the right to prayer in the manner one chooses be silenced by shouts of rage; I will not let the right to the free exercise of religion be confined by narrowness of vision; and I will not let the right to erect a house of prayer be torn down by blind bigotry.

11. Ground Zero is a scar upon the landscape of New York City not only because of the loss of 3,000 innocent lives, sacrificed at the altar of international fanaticism, but because it allows bigotry like that of Plaintiff in this suit to flourish in the rich mud of ignorance and religious intolerance. The diversity of America is not its weakness, but its strength. When in the days following an analogous atrocity in 1941 our people marshaled their will and marched off, nobody was an American of this type or that. We were all united under a single banner pledged to eradicate the very kind of religious intolerance we

see in Plaintiff, represented in those years by the Third Reich and those aligned with it.

On October 11, 2010, the New York Post—a New York-based daily newspaper with nationwide circulation—published an article quoting one of those statements. J.A. 136 ("The developers behind the proposed mosque and cultural center near Ground Zero are blasting a $350 million lawsuit filed by a 9/11 first responder as 'blind bigotry.'").

The New York Supreme Court subsequently granted Rauf's motion to dismiss on the ground that the complaint failed to state any legally cognizable claim for relief. *See Forras v. Rauf*, 975 N.Y.S. 2d 366, 2012 WL 7986872 (N.Y. Sup. Ct. 2012).

Shortly thereafter, both Forras and Klayman filed suit against Bailey in the District of Columbia Superior Court alleging defamation, false light, assault, and intentional infliction of emotional distress caused by the statements Bailey made in dismissal papers filed in New York Supreme Court and the reporting of one of those statements in the New York Post. Four months later, Klayman and Forras voluntarily dismissed that lawsuit and filed the present action against Bailey in the United States District Court for the District of Columbia.[1]

Bailey filed a motion to dismiss on multiple grounds, asserting: (i) lack of subject-matter jurisdiction; (ii) lack of personal jurisdiction; (iii) statute of limitations; (iv) the judicial-proceedings privilege; (v) First Amendment protection; and (vi) collateral estoppel and *res judicata*. In

---

[1] Although the Plaintiffs sued Rauf in federal court, Rauf did not appear in the district court and does not appear here.

addition, Bailey asked the court to dismiss the case under the District of Columbia's Anti-Strategic Lawsuits Against Public Participation Act of 2010 (the Anti-SLAPP Act), D.C. Code § 16-5501–5505. That law imposes a heightened pleading standard for claims related to "act[s] in furtherance of the right of advocacy on issues of public interest" by requiring plaintiffs to show that their claims are "likely to succeed on the merits." *Id.* § 16-5502(b).

The district court granted the motion to dismiss. The court first held that the District's Anti-SLAPP Act, rather than ordinary federal rules of pleading, should be applied in federal diversity cases. The court then held that the complaint failed under the Anti-SLAPP Act because Forras and Klayman had not shown that they were likely to succeed on the merits of any of their claims.[2] In addition, the court ruled that the statute of limitations barred all of the claims in the complaint. The district court did not address either subject-matter or personal jurisdiction.[3]

## II

Bailey's motion to dismiss raised both jurisdictional and merits objections to the complaint. Ordinarily, determining jurisdiction is a federal court's first order of business.

---

[2] This court subsequently ruled in *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015), that a federal court exercising diversity jurisdiction cannot apply the Anti-SLAPP Act's heightened pleading provision.

[3] Bailey also filed a motion for attorneys' fees, and the district court's order invited Bailey to document his request. The district court, however, subsequently stayed the attorneys' fee motion pending disposition of this appeal.

"Without jurisdiction the court cannot proceed at all in any cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). Indeed, for a district court "to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101–102 (1998); *see also, e.g.*, *Broudy v. Mather*, 460 F.3d 106, 111 (D.C. Cir. 2006) ("We begin, as we must, with the question whether the District Court had jurisdiction to consider the plaintiffs' claims."); *Tuck v. Pan American Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1981) ("Jurisdiction is, of necessity, the first issue for an Article III court.").

Without even acknowledging this background rule, the district court leapfrogged over the serious jurisdictional issues that Bailey raised and decided the Anti-SLAPP Act and statute-of-limitations questions. But assessing jurisdiction is not a "legal nicet[y]"; it is an "essential ingredient" of our ability to hear a case. *Steel Co.*, 523 U.S. at 101. The district court plainly should have satisfied any jurisdictional concerns before turning to a merits question like the Anti-SLAPP Act. And the court should have at least paused to address whether deciding an issue like the statute of limitations before confirming its jurisdiction accords with *Steel Co.* and its progeny. *Cf. Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 432 (2007) (recognizing that a court may dismiss a case on *forum non conveniens* grounds before addressing jurisdiction).

What is clear is that we can "turn[] directly to personal jurisdiction" to resolve this case because, unlike the complicated subject-matter jurisdiction and fact-intensive statute-of-limitations issues in this case, the absence of personal jurisdiction over Defendant Bailey is

"straightforward" and "present[s] no complex question of state law," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999).[4]

The complaint fails to allege any plausible basis for exercising personal jurisdiction over the only defendant in this case, Adam Bailey. To establish personal jurisdiction over a non-resident like Bailey, we must first decide whether statutory jurisdiction exists under the District's long-arm statute and, if it does, then we must determine whether an exercise of jurisdiction would comport with constitutional limitations. *See GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).[5]

The District of Columbia's long-arm statute provides, as relevant here:

---

[4] With respect to subject-matter jurisdiction, the Plaintiffs failed specifically to allege the parties' diverse citizenship in their complaint, even though they bore the burden of establishing jurisdiction by "pleading the citizenship of each and every party to the action." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983). The Plaintiffs did, however, include addresses from diverse States below each party's name in the case caption. It is far from clear that merely listing addresses in a caption discharges a plaintiff's duty to plead facts showing diverse citizenship. Nevertheless, given the clear absence of personal jurisdiction, we need not address that question, and we deny as moot the Plaintiffs' motion to amend the record on appeal to allege facts bearing on the parties' citizenship.

[5] The Plaintiffs have never alleged that Bailey had such "continuous and systematic" contacts within the District of Columbia to warrant the assertion of general personal jurisdiction, nor could they on this record. *See International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945).

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —

(1) transacting any business in the District of Columbia;

\* \* \* \* \*

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; \* \* \*

D.C. Code § 13-423(a).

The complaint's allegations fall short of what the long-arm statute requires.

*First*, with respect to subsection (a)(1), the Plaintiffs did not allege "a claim for relief arising from [Bailey's] \* \* \* transacting any business in the District of Columbia," or even suggest that he conducts or ever conducted any business within the District. D.C. Code § 13-423(a)(1). To be sure, that provision has been held "to be coextensive (for cases that fit within its description) with the Constitution's due process limit." *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987) (Ruth Bader Ginsburg, J.) (citing *Mouzavires v. Baxter*, 434

A.2d 988, 990–992 (D.C. 1981)). But subsection (a)(1) still "contemplates a connection that [is] []related to the claim in suit." *Id.* at 763. Bailey "d[id] not, nor ha[d] [he] ever practiced law or conducted any * * * business in the District of Columbia," and he had not even "visited the District of Columbia for any purpose since 1990." J.A. 49. After the complaint was filed, he made a single, three-day trip to the District of Columbia in September 2012 for a conference that was entirely unrelated to this lawsuit. "Otherwise, [he had] no personal or professional contacts with the District of Columbia." *Id.*

The Plaintiffs have neither disputed those facts nor made any plausible allegation linking their defamation and other related claims to business Bailey conducted within the District. All the Plaintiffs have argued under this prong of the long-arm statute is that Bailey's "activity was directed at a D.C. resident and, in fact, reached and affected said resident." ECF No. 9 at 13. The plain text of subsection (a)(1), however, focuses on where the defendant undertook the challenged (business) actions, not where the plaintiff felt the injury, and the Plaintiffs' argument does nothing to suggest that Bailey himself transacted his challenged legal (or any other) business in the District.

*Second* and similarly, with respect to subsection (a)(3), the complaint makes no plausible allegation that Bailey's tortious "act or omission" was undertaken in the District. D.C. Code § 13-423(a)(3). To the contrary, the complaint is clear that the challenged statements were made in New York.

The Plaintiffs argued below that the court could assert personal jurisdiction under subsection (a)(3) because the alleged injury was felt within the District. Controlling circuit precedent forecloses that argument. Subsection (a)(3) "is a

precise and intentionally restricted tort section, * * * which stops short of the outer limits of due process, * * * and which confers jurisdiction only over a defendant who *commits an act in the District* which causes an injury in the District, without regard to any other contacts." *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986) (emphasis added; citations and quotation marks omitted). And this court has twice held that publishing defamatory or otherwise tortious statements within the District that were made outside the District falls short of what subsection (a)(3) requires.

In *McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996), this court ruled that subsection (a)(3) did not permit the exercise of personal jurisdiction over the author of an allegedly defamatory article that was published in Esquire Magazine in New York because the author's "acts were not in the District; it [was] undisputed that he wrote the article in New York and delivered it to Esquire in New York." *Id.* at 1300. In so holding, we explicitly rejected the argument— pressed again by the Plaintiffs here—that their "injury is part of the tort." *Id.* That is because such a theory "would obliterate subsection (3)'s careful distinction between 'injury' and 'act.'" *Id.*

Likewise, in *Moncrief*, we held that subsection (a)(3) had no application to a claim that a nonresident newspaper publisher had "sen[t] an allegedly libelous article into the District of Columbia." 807 F.2d at 218. The relevant "act," we explained, was the "uttering [of] defamatory statements," and the "printing and mailing of the newspaper," all of which happened outside of the District. *Id.* at 220 (internal quotation marks and citation omitted). In direct answer to the Plaintiffs' argument here, *Moncrief* ruled that subsection (a)(3) draws a sharp line between "the act of the defendant and the injury it causes," *id.* at 221, so that alleging that "[t]he brunt of the

injury, in particular the damage to appellants' professional reputation, occurred in Washington, D.C." falls far short of triggering subsection (a)(3) of the long-arm statute, *id.* at 220 n.7 (quoting Brief of Appellant at 7–8, *Moncrief*, 807 F.2d 217 (No. 85-6153)); *see also Margoles v. Johns*, 483 F.2d 1212, 1213 (D.C. Cir. 1973) (subsection (a)(3) does not support personal jurisdiction over an out-of-District newspaper reporter who called a congressional office and "maliciously spoke" of the plaintiff).

Given that extensive, directly on-point, and controlling precedent, for which the Plaintiffs offered no colorable distinction, the assertion of personal jurisdiction under subsection (a)(3) is meritless.

*Third* and finally, subsection (a)(4) provides the Plaintiffs no jurisdictional refuge. That provision permits an exercise of jurisdiction over a tortious act or omission committed outside the District that causes injury within the District if, and only if, the defendant "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from * * * services rendered" in the District. D.C. Code § 13-423(a)(4). "The drafters of [D.C.'s long-arm statute] apparently intended that the (a)(4) subsection would not occupy all of the constitutionally available space." *Crane*, 814 F.2d at 762. The statute requires both an injury inside the District, and that "the defendant engages in some persistent course of conduct or derives substantial revenue from the District." *Moncrief*, 807 F.2d at 221. Nothing in the complaint or the Plaintiffs' argument even hints at such persisting conduct or benefit tied to the District.

The Plaintiffs argued that the "continuing and ongoing" publication of Bailey's allegedly defamatory comments

triggered subsection (a)(4). ECF No. 9 at 15. Not so. Bailey has not published anything within the District; he just filed his dismissal papers in New York state court. Indeed, just as in *McFarlane*, not a word of the complaint alleges that Bailey made a penny from the newspaper's publication within the District of a single quote from his dismissal papers. *See McFarlane*, 74 F.3d at 1300. Moreover, *McFarlane* specifically held that "*writing* an article for a publication that is circulated throughout the nation, including the District, hardly constitutes doing or soliciting business, or engaging in a persistent course of conduct, *within* the District." *Id.* Even less so, then, could Bailey's remarks in papers filed in a New York court that *someone else* chose to quote in a newspaper article suffice.[6]

The Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984)—which was issued well before our decision in *McFarlane*—does nothing to help the Plaintiffs. That decision analyzed personal jurisdiction under the federal Constitution's Due Process Clause alone, because California's long-arm statute allowed jurisdiction "whenever permitted by the state and federal Constitutions." *Id.* at 789 n.5. Subsection (a)(4)'s reach is far more cabined. *See McFarlane*, 74 F.3d at 1300; *Crane*, 814 F.2d at 762; *Moncrief*, 807 F.2d at 221.

---

[6] The Plaintiffs also make the argument that "[d]efendants intended to reach the public in D.C., particularly the many Muslims residing in D.C." so that the Plaintiffs "would be subject to attacks incited by the defamatory statements." ECF No. 9 at 14. That bald assertion is unsupported by any assertion of fact within the complaint. Anyhow, the intent to reach readers in the District did not work in *McFarlane*, and fares no better here.

In any event, the *Calder* Court allowed personal jurisdiction over the reporter and publisher of an allegedly defamatory article because the article concerned the "*California activities* of a *California resident*," and "[t]he article was drawn from *California sources*." 465 U.S. at 788 (emphases added). As a result, "California [was] the focal point both of the story and of the harm suffered." *Id.* at 789. This case, by contrast, involves the alleged defamation in New York of a non-District resident by a New York resident arising out of New York litigation over a New York land-development dispute. Neither the District of Columbia nor any conduct by any party within the District is even mentioned in the pleadings or the article at issue.

On top of that, the Plaintiffs here seek to assert personal jurisdiction over the author of an affidavit and legal brief that provided the *source* of a quoted statement in an article; they have not sued the author or publisher of an article, as occurred in *Calder*. *See Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (Due Process Clause did not permit Texas courts to assert personal jurisdiction over a non-Texas resident for allegedly defamatory statements made in New York about a Texas plaintiff and published by Sports Illustrated in a widely publicized report and on its website, since "the statements did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state.").

\* \* \*

Under controlling circuit precedent, the complaint makes no plausible allegation of personal jurisdiction over Bailey, and the district court should have promptly dismissed the case on that basis. However, because the district court dismissed the case, we can affirm the district court's judgment on the

alternative ground that it lacked jurisdiction, *see* FED. R. CIV. P. 12(b)(2).

*So ordered.*