# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 14, 2016          Decided March 24, 2017

No. 15-7024

RIVKA LIVNAT, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF BEN-YOSEF LIVNAT, ET
AL.,
APPELLANTS

v.

PALESTINIAN AUTHORITY, A/K/A THE PALESTINIAN INTERIM
SELF-GOVERNMENT AUTHORITY,
APPELLEE

———

Consolidated with 15-7025

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:14-cv-00668)
(No. 1:14-cv-00669)

———

*Jessica P. Weber* argued the cause for appellants. With her
on the briefs were *Andrew D. Levy* and *Alan I. Baron*.

*Peter Raven-Hansen* and *David A. Reiser* were on the
brief for *amici curiae* Former Federal Law Enforcement
Officials in support of appellants.

*Mitchell R. Berger* argued the cause for appellee. With him on the brief were *Pierre H. Bergeron*, *John Burlingame*, *Alexandra E. Chopin*, and *Gassan A. Baloul*.

Before: GRIFFITH and WILKINS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: In 2011, Jewish worshippers were shot by armed gunmen at Joseph's Tomb, a holy site in the West Bank believed by many to be the burial place of the biblical patriarch. Among the victims were Ben-Yosef Livnat, who was killed, and U.S. citizens Yitzhak Safra and Natan Safra, who were wounded in the gunfire. The Livnat and Safra families brought suit in federal district court seeking to hold the Palestinian Authority vicariously liable for the attack. For the reasons set forth below, we conclude that the suits may not be brought in the courts of the United States.

I

According to the Livnats and Safras, the perpetrators of the attack were the security guards hired to protect Joseph's Tomb by the Palestinian Authority. The Palestinian Authority is a government headquartered in the West Bank city of Ramallah. Established following the 1993 Oslo Accords between Israel and the Palestine Liberation Organization, the Palestinian Authority administers civilian and internal security services in parts of the West Bank and the Gaza Strip. External security remains within Israel's control. *See* Interim Agreement on the West Bank and the Gaza Strip, Isr.-P.L.O., art. X, Sept. 28, 1995, 36 I.L.M. 551, 561 [hereinafter Oslo II]. The Oslo Accords also circumscribe the Palestinian Authority's "powers and responsibilities in the sphere of

foreign relations." *Id.* art. IX, 36 I.L.M. at 561. The Palestinian Authority has non-member observer status in the United Nations and receives foreign aid from the United States, the European Union, and other sources. The United States does not recognize the Palestinian Authority as a government of a sovereign state.

The families allege that the guards who perpetrated the attack at Joseph's Tomb were acting within the scope of their employment by the Palestinian Authority, which knew that the commander of the guards had served time in Israeli prison on terrorism-related charges. The families claim that the attack was directed at the United States as "part and parcel of" the Palestinian Authority's "general practice of using terrorism to influence United States public opinion and policy." Compl. at 5, *Livnat v. Palestinian Auth.*, No. 1:14-cv-00668 (D.D.C. Apr. 21, 2014); Compl. at 3, *Safra v. Palestinian Auth.*, No. 1:14-cv-00669 (D.D.C. Apr. 21, 2014).

The Livnats and Safras filed identical lawsuits against the Palestinian Authority in federal district court, bringing claims under both the Antiterrorism Act, 18 U.S.C. § 2333, and common-law tort. The Palestinian Authority moved to dismiss for lack of personal jurisdiction, among other grounds. The families opposed and filed cross-motions for leave to take jurisdictional discovery. The court denied the families' cross-motions for jurisdictional discovery, reasoning that their proposed discovery would have been futile, and granted the motions to dismiss.

The district court addressed the issue of personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), concluding that the Livnats and Safras had forfeited all other statutory bases for personal jurisdiction. *Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 24-25 & n.9 (D.D.C. 2015); *Safra v.*

4

*Palestinian Auth.*, 82 F. Supp. 3d 37, 43 & n.8 (D.D.C. 2015). Rule 4(k)(2) permits a federal court to exercise personal jurisdiction if the claim arises under federal law, process was properly served, the defendant is not subject to jurisdiction in any state court of general jurisdiction, and—the requirement at issue here—jurisdiction "is consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2). The district court held that this last requirement was not met. Applying the Due Process Clause of the Fifth Amendment, the court found that the Palestinian Authority was not "at home" in the United States and that the attack was not sufficiently directed at the United States.

The Livnats and Safras timely appealed, and their cases are consolidated here. We have jurisdiction under 28 U.S.C. § 1291. In both cases, we review de novo the district court's dismissal for lack of personal jurisdiction, and we review for abuse of discretion the denial of jurisdictional discovery. *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008).

II

The question before us is whether the Fifth Amendment's Due Process Clause permits personal jurisdiction over the Palestinian Authority in these disputes. We begin with the contention by the Livnats and Safras that the Clause imposes no limits at all on personal jurisdiction over the Palestinian Authority.

A

In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court gave the now-canonical explanation of what "due process requires" before a defendant outside a forum's borders may be subject to suit: the defendant

must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Accordingly, we have explained that the Fifth Amendment's Due Process Clause protects defendants from "being subject to the binding judgments of a forum with which [they have] established no meaningful contacts, ties, or relations," and requires "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

This general rule, however, has a few narrow exceptions. Constitutional limits on the personal jurisdiction of the courts do not protect entities that are not covered by the Due Process Clause, and the language of the Clause speaks only of "persons." U.S. CONST. amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."). The Supreme Court held in *South Carolina v. Katzenbach*, 383 U.S. 301 (1966), that States of the Union are not "persons" under the Clause. *Id.* at 323-24. And we held in *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002), that neither are foreign states. *Id.* at 96.

Nor is the Palestinian Authority, according to the appellants, who urge us to extend *Price* to the Palestinian Authority by holding that *Price* applies not just to sovereign foreign states, but to any foreign entity that "functions as a government." Appellants' Br. 19.

We reject appellants' reading of *Price*. To begin with, *Price* represents a rare exception to the general rule that the Due Process Clause protects all litigants in our courts, especially by limiting the power of courts to hale defendants

before them. We are reluctant to undermine this general rule by widening the *Price* exception. Indeed, we have previously assumed that *Price* is narrower than the appellants maintain, understanding its holding to be that "foreign *sovereigns* . . . are not 'persons' under the Fifth Amendment's Due Process Clause." *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 809 (D.C. Cir. 2012) (emphasis added); *see also id.* at 813 (describing *Price*'s reasoning as "put[ting] foreign *sovereigns* in a separate constitutional category from 'private entities'" (emphasis added) (quoting *Price*, 294 F.3d at 98)).

We confirm that measured interpretation of *Price* today. The rule in *Price*—that foreign states are not "persons" under the Due Process Clause—applies only to *sovereign* foreign states.[1] Nothing in *Price*, other precedent, or the appellants' arguments compels us to extend the rule in *Price* to all foreign government entities. And no party here argues that the Palestinian Authority is a *sovereign* foreign state.

B

In *Price*, we held that the federal courts had personal jurisdiction over Libya despite its lack of "minimum contacts" with the United States, because "foreign states are not 'persons' protected by the Fifth Amendment." 294 F.3d at 96. We reached this conclusion for two principal reasons. First, in light of *Katzenbach*'s holding that States of the Union are not "persons" under the Due Process Clause, we decided that foreign states are similarly situated. *Id.* at 96-97. Observing

---

[1] We merely clarify what qualifies as a "foreign state" under *Price*. Our holding does not bear on the separate question of whether "an agency or instrumentality" of a foreign state "has a constitutional status different from that of" the foreign state itself under the Due Process Clause. *TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 301 (D.C. Cir. 2005).

that "in common usage, the term 'person' does not include the sovereign," *id.* at 96 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)), and that "person" in the Due Process Clause had already been interpreted to exclude States of the Union, we asked whether there was any "compelling reason to treat foreign sovereigns more favorably," *id.* We could identify none, because if anything the Constitution treats foreign sovereigns less favorably. The States of the Union "derive important benefits" from the Constitution (such as protection against invasion, U.S. CONST. art IV, § 4) in exchange for "abid[ing] by significant limitations" (such as the supremacy of federal law, U.S. CONST. art. VI, cl. 2). *Price*, 294 F.3d at 96. By contrast, foreign states "are entirely alien to our constitutional system," and the Constitution neither confers benefits nor imposes limitations as it does for States of the Union. *Id.* at 97, 99. We concluded that "it would be highly incongruous to afford greater Fifth Amendment rights to foreign nations" than to States of the Union. *Id.* at 96.

Second, we explained that foreign states, as "the juridical equals of the government that seeks to assert jurisdiction over them," can rely on "mechanisms in the international arena," instead of domestic law, to protect themselves. *Id.* at 98. Therefore, foreign states can rely on those other protections against U.S. government power, and do not need the Due Process Clause. *Id.* at 97-99.

We also mentioned that it was "worth noting" that "serious practical problems might arise" if foreign states enjoyed due-process rights. *Id.* at 99. For example, foreign states might challenge economic sanctions as violations of due process. *Id.* We avoided such problems by holding that the Due Process Clause does not protect foreign states.

The appellants contend that *Price*'s reasoning applies equally in this case. But in *Price*, we had a particular type of entity in mind. When addressing whether the Due Process Clause applies to "foreign states," we used that term interchangeably with foreign "nations," "governments," and "sovereigns." *See id.* at 95-100. Libya was a "sovereign nation" fairly described by *all* of those terms. *Id.* at 98. This case is different. Both parties acknowledge that the Palestinian Authority is not recognized by the United States as a government of a sovereign state. And the appellants—even though they seek to apply *Price*'s holding here—concede that the Palestinian Authority is not sovereign in "law" or "fact," apparently referring to the Palestinian Authority's limited powers and incomplete independence from Israel. Appellants' Br. 17 & n.3 (citing *Ungar v. Palestine Liberation Org.*, 402 F.3d 274 (1st Cir. 2005), which held that the "reserved powers" that Israel retained under the Oslo Accords "are incompatible with the notion that the [Palestinian Authority] had independent governmental control over the defined territory," and therefore the Palestinian Authority was not a foreign "state" entitled to sovereign immunity, *id.* at 291). The question, then, is whether *Price*'s rationales depended on the fact that Libya was sovereign, or whether they extend to any foreign government entity, even if not recognized as sovereign by the United States and potentially lacking ultimate, independent governing authority in key respects.

We think the former is correct: *Price*'s primary rationales hinge on sovereignty. First, *Price*'s rationale that foreign states have the same status as States of the Union under the Due Process Clause is based on the notion that both are sovereign. Indeed, our whole discussion of foreign states and States of the Union was a comparison of two sets of sovereign entities. After all, we started that discussion by observing that "in common usage, the term 'person' does not include the sovereign." *Id.* at

96 (quoting *Will*, 491 U.S. at 64). The analysis that followed that observation considered whether the settled law that the term "person" in the Due Process Clause excludes one set of sovereigns—States of the Union—meant that the term also excluded another set of sovereigns—foreign states. And in considering that question, we compared how the Constitution governs States of the Union and foreign states with respect to *attributes of sovereignty* like sovereign immunity, territorial security, and judicial power. *Id.* at 96, 99. These are attributes that non-sovereign foreign governments might lack—for instance, the Palestinian Authority lacks power to secure its territory against external threats. *See* Oslo II, art. X, 36 I.L.M. at 561. Thus, in *Price*, we compared foreign states and States of the Union not as run-of-the-mill entities, or even just as governments, but rather as *sovereigns*.

Ignoring the underlying premise that States of the Union and foreign states are both sovereigns, the appellants instead focus on a different aspect of *Price*'s comparison of the two. They note that *Price* described foreign states, unlike States of the Union, as "alien to our constitutional system," 294 F.3d at 96, and argue that *Price*'s rule for foreign states must also apply to non-sovereign foreign governments because they are also "alien."

That is wrong several times over. For one, we have already rejected the notion that "alien" entities are disqualified from due-process protection. "Both the Supreme Court and this court have repeatedly held that foreign corporations may invoke due process protections to challenge the exercise of personal jurisdiction over them," even though those entities are "just as 'alien to our constitutional system' as the Libyan government was in *Price*." *GSS*, 680 F.3d at 813 (quoting *Price*, 294 F.3d at 96). Furthermore, "alien" status became relevant in *Price* only after we began comparing foreign states

to States of the Union. Once we recognized that foreign states were comparable to States of the Union in that both are sovereign, we considered whether there was any "compelling reason to treat foreign sovereigns more favorably." 294 F.3d at 96. Because foreign states are "alien to our constitutional system" while the States are "integral" to the "Constitution's infrastructure," we found implausible the notion that the Constitution would treat foreign states more favorably. *Id.* But for entities that are not sovereign, the initial analogy to States of the Union never gets off the ground; whether they are "alien" does not matter.

*Price*'s second rationale, that international mechanisms displace domestic law for foreign states, also does not work for non-sovereign entities. Comity and international law "set the terms by which *sovereigns* relate to one another." *Id.* at 98 (emphasis added). By contrast, an entity that is not the "juridical equal" of the United States—such as a non-sovereign—lacks the "panoply of mechanisms in the international arena" that a sovereign state like Libya can use to resolve disputes with the United States. *Id.* Significantly, direct dispute-resolution mechanisms are generally available only to entities that are juridical equals *in the eyes of the United States*, because political recognition "is a precondition of regular diplomatic relations." *Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2084 (2015). Moreover, further underscoring that *Price*'s rationale depends on sovereignty, the United States recognizes special privileges, based on comity and international-law principles, for sovereigns alone. *See, e.g.*, *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 408-09 (1964) ("Under principles of comity governing this country's relations with other nations, sovereign states are allowed to sue in the courts of the United States."); *id.* at 401 (describing the "act of state doctrine," which "precludes the courts of this country from inquiring into the validity of the public acts a recognized

foreign sovereign power committed within its own territory"); *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004) ("[T]his Court ordinarily construes ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations."); *cf.* Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.*

To be sure, even non-sovereigns can participate in some forms of international relations. But that participation is limited. *See* 1 OPPENHEIM'S INTERNATIONAL LAW § 35 (9th ed. 2008) (recognizing that "there is no doubt" that non-sovereign entities "cannot be full, perfect, and normal subjects of international law"); JAMES CRAWFORD, BROWNLIE'S PRINCIPLES OF PUBLIC INTERNATIONAL LAW 448 (8th ed. 2012) (explaining that "sovereignty" includes a state's "capacity to act on the international plane, representing that territory and its people"); LOUIS HENKIN ET AL., INTERNATIONAL LAW 241-42 (3d ed. 1993) ("[D]espite the dogma that only sovereign states could be subjects of international law, many other entities" can be "regarded as international legal persons *for certain purposes and in some respects*," but "these developments should not obscure the primary and predominant role of the state as the subject of international law." (emphasis added)). Because they lack the full range of rights and obligations that sovereigns have under international law, non-sovereigns—unlike the defendant in *Price*—cannot rely on comity and international-law protections to the exclusion of domestic law.

Finally, *Price*'s concern that recognizing due-process rights might pose "practical problems," 294 F.3d at 99, does not change our conclusion that *Price*'s holding applies to sovereigns alone. The appellants argue that problems might arise if non-sovereigns raised due-process challenges to foreign-policy decisions regarding foreign aid, for instance. But no such problems have arisen thus far, even though courts

have assumed that non-sovereign governments have due-process rights. *Cf., e.g.*, *Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 26 (D.D.C. 2015) (collecting district-court cases recognizing the Palestinian Authority's due-process rights). And in any event, our decision today does not define the content of any due-process rights outside the narrow context of personal jurisdiction.

C

This is not the first time that we have applied personal-jurisdiction protections under the Due Process Clause to a non-sovereign foreign government. In *Toumazou v. Turkish Republic of Northern Cyprus*, No. 14-7170 (D.C. Cir. Jan. 15, 2016), an unpublished judgment, plaintiffs invoked Rule 4(k)(2) to establish personal jurisdiction over the Turkish Republic of Northern Cyprus (TRNC), a self-declared state that the United States does not recognize as sovereign, *see U.S. Relations with Cyprus*, U.S. DEP'T OF STATE (Sept. 29, 2016), http://www.state.gov/r/pa/ei/bgn/5376.htm. We did not apply the rule from *Price*. Instead, we conducted the usual due-process inquiry, examining "the defendant's contacts with the forum," and ultimately concluding that personal jurisdiction was inconsistent with due process. *Toumazou*, slip op. at 2 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

The Second Circuit likewise applies due-process standards for personal jurisdiction when the defendant is a non-sovereign foreign government. In *Waldman v. Palestine Liberation Organization*, 835 F.3d 317 (2d Cir. 2016), a case substantially similar to the case before us, the Second Circuit held that the Palestinian Authority and the Palestine Liberation Organization are both "persons" under the Fifth Amendment's Due Process Clause. *Id.* at 329. The Second Circuit explained

that only "separate sovereigns, recognized by the United States government as sovereigns," are foreign states left unprotected by the Due Process Clause. *Id.* Both the Palestinian Authority and the Palestine Liberation Organization remain protected by the Due Process Clause under that rule, because neither is so recognized. *Id.* We agree, at least to the extent that only sovereign entities are excluded from due-process protection as foreign states. As explained below, however, while the Second Circuit uses political recognition as the sole definition of sovereignty for due-process purposes, we leave open whether additional considerations could be relevant in future cases.

D

The appellants offer several other arguments why non-sovereign governments like the Palestinian Authority are not entitled to due-process protection. None is persuasive. First, they argue that our decisions in *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005), and *GSS Group Ltd v. National Port Authority*, 680 F.3d 805 (D.C. Cir. 2012), support their position. Those cases held that "[w]henever a foreign sovereign controls an instrumentality to such a degree that a principal-agent relationship arises between them," then the instrumentality, like the sovereign, receives no due-process protection. *GSS*, 680 F.3d at 815; *see also TMR*, 411 F.3d at 301. That is, if an instrumentality is sufficiently close to its government, then the *Price* rule applies. The appellants insist that under this principle, the *Price* rule applies here too, because the Palestinian Authority "is not merely a state-owned corporation," it "*is* the government." Appellants' Br. 21. That is a non sequitur. Whether government instrumentalities receive the same due-process protection as their government (the question in *TMR* and *GSS*) has nothing to do with whether a government receives due-process protection in the first place (the question here).

Next, the appellants suggest that other non-sovereign government entities, such as municipalities, do not receive due-process protections, demonstrating a general principle that governments cannot be "persons" under the Due Process Clause. But the only appellate decision they cite, *City of East St. Louis v. Circuit Court*, 986 F.2d 1142 (7th Cir. 1993), is inapposite. In that case, the Seventh Circuit held that municipalities are not "persons" under the Due Process Clauses. *See id.* at 1144. But the court did not reason, as the appellants do, that no government can receive due-process protection. Rather, the court relied on the unrelated principle that municipalities are creatures of a State and therefore lack any constitutional rights against the State. *See id.* (citing *Vill. of Arlington Heights v. Reg'l Transp. Auth.*, 653 F.2d 1149, 1152 (7th Cir. 1981) (citing *City of Newark v. New Jersey*, 262 U.S. 192, 196 (1923) ("The city cannot invoke the protection of the Fourteenth Amendment against the state."))); *see also City of Trenton v. New Jersey*, 262 U.S. 182, 187 (1923) ("[A municipality is] the creature of the state exercising and holding powers and privileges subject to the sovereign will.").[2, 3]

Finally, the appellants argue that applying due-process protections to limit personal jurisdiction in Antiterrorism Act

_____

[2] It is not even clear whether political subdivisions of a state lack due-process rights. *See South Dakota v. U.S. Dep't of Interior*, 665 F.3d 986, 990 n.4 (8th Cir. 2012) (describing the circuits as split on the issue). We take no position on the matter, but simply observe that the cases that address the issue do not resolve the question here.

[3] The appellants also cite a smattering of trial-court cases denying due-process rights to government entities such as political subdivisions of states, U.S. territories, and other Palestinian organizations. None of those cases explains why being a government would disqualify an entity from the protections of due process.

cases would thwart Congress's intent to provide redress in U.S. courts for terrorism abroad. But there is no indication that Congress thought ordinary due-process requirements would not apply here. And regardless, Congress cannot wish away a constitutional provision.

\* \* \*

We conclude that *Price*'s narrow exception to the general due-process personal-jurisdiction rule applies only to foreign sovereigns. Here, no party argues that the Palestinian Authority is sovereign by any definition. Appellants' Br. 17 (denying the Palestinian Authority's sovereignty "in fact, in law, and as reflected in the official positions of the United States and other countries"); Appellee's Br. 20-21 ("[I]t is undisputed that the *PA is not sovereign* in the view of the United States." (emphasis in original)).[4] Accordingly, *Price* does not apply, and therefore the district court had personal jurisdiction over the Palestinian Authority only if consistent with due-process limits.

III

Our analysis of constitutional limits on personal jurisdiction is governed by the Due Process Clause of the Fifth

---

[4] We therefore have no occasion in this case to define the precise limits of what constitutes a "sovereign" excluded from personhood under the Due Process Clauses. At the very least, any such definition must be consistent with *Price*'s twin rationales, which are limited to entities that (1) are analogous to States of the Union, and (2) have recourse to comity and international-law protections as do "juridical equals" of the United States. In the mine run of cases, whether the United States recognizes the entity as sovereign will determine whether those rationales apply. But we do not attempt to address today the full range of considerations that may arise on different facts in future cases.

Amendment. That is unusual, because most cases in the courts of the United States concern Federal Rule of Civil Procedure 4(k)(1), which directs courts to determine whether a state court would have personal jurisdiction, an analysis governed by the Fourteenth Amendment. But the families assert personal jurisdiction under Rule 4(k)(2), which examines the federal court's jurisdiction, an analysis governed by the Fifth Amendment.

According to the Livnats, Safras, and *amici*, the Fifth Amendment's Due Process Clause imposes personal-jurisdiction restrictions that are less protective of defendants than those imposed by the Fourteenth Amendment. Therefore, they argue, we should ignore the standards announced in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), and other Supreme Court personal-jurisdiction cases decided under the Fourteenth Amendment. Instead, they urge us simply to balance the interests favoring and disfavoring jurisdiction. Under that approach, contacts with the United States that would be insufficient under the Fourteenth Amendment might justify personal jurisdiction under the Fifth.

In support of their newly devised theory of the Fifth Amendment, the Livnats, Safras, and *amici* argue that the Fifth Amendment is less concerned with circumscribing the power of courts than is the Fourteenth Amendment. The Fourteenth Amendment limits the power of state courts so as to "prevent[] states from encroaching upon each other's sovereignty." *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 203 n.4 (D.C. Cir. 1981). These federalism concerns do not apply, however, in the Fifth Amendment context, because that Amendment limits only the federal government, not the states. Accordingly, Fifth Amendment jurisdictional limits should be more permissive—or so the argument goes.

That argument buckles under the weight of precedent. No court has ever held that the Fifth Amendment permits personal jurisdiction without the same "minimum contacts" with the United States as the Fourteenth Amendment requires with respect to States. To the contrary, both the Supreme Court and this court have applied Fourteenth Amendment personal-jurisdiction standards in Fifth Amendment cases. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 620 (1992) (concluding that the Fifth Amendment's Due Process Clause did not foreclose personal jurisdiction because the defendant had "purposefully availed itself of the privilege of conducting activities within the United States" (alterations omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))); *Mwani v. bin Laden*, 417 F.3d 1, 11-14 (D.C. Cir. 2005); *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1028-29 (D.C. Cir. 1982). To be sure, neither the Supreme Court nor this court has expressly analyzed whether the Fifth and Fourteenth Amendment standards differ. But the Second, Sixth, Seventh, Eleventh, and Federal Circuits have, and all agree that there is no meaningful difference in the level of contacts required for personal jurisdiction. [5] The only

---

[5] *See Waldman*, 835 F.3d at 330 ("[The Second Circuit's] precedents clearly establish the congruence of due process analysis under both the Fourteenth and Fifth Amendments."); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) (holding that the Fifth Amendment personal-jurisdiction analysis "parallels" the Fourteenth Amendment analysis); *Abelesz v. OTP Bank*, 692 F.3d 638, 660 (7th Cir. 2012) (finding "no merit" in the argument that invoking the Fifth Amendment "relaxes the minimum-contacts inquiry"); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1219 n.25 (11th Cir. 2009) (using Fourteenth Amendment cases to "guide" the Fifth Amendment personal-jurisdiction analysis because "the language and policy considerations of [the two clauses] are virtually identical"); *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350 (Fed. Cir. 2002)

difference in the personal-jurisdiction analysis under the two Amendments is the *scope* of relevant contacts: Under the Fourteenth Amendment, which defines the reach of state courts, the relevant contacts are state-specific. Under the Fifth Amendment, which defines the reach of federal courts, contacts with the United States as a whole are relevant.[6] That difference is not at play in this case.

The justifications offered by the Livnats, Safras, and *amici* for their novel theory do not persuade us to depart from this uniform precedent. They observe that Fifth Amendment personal-jurisdiction standards do not safeguard federalism like Fourteenth Amendment standards do. But personal jurisdiction is not just about federalism. A "vital" purpose of personal-jurisdiction standards is to "ensure[] fairness to the defendant." *Stabilisierungsfonds Fur Wein*, 647 F.2d at 203

("Although it was developed in the context of the due process clause of the Fourteenth Amendment, we apply the standard articulated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny to Fifth Amendment due process cases . . . .").

[6] Some courts have also suggested that under the Fifth Amendment, even if the defendant has sufficient nationwide contacts, a plaintiff must additionally justify jurisdiction in the particular state. *See, e.g.*, *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1211 (10th Cir. 2000) ("[D]ue process requires something more" than permitting jurisdiction "as long as [defendants] have minimum contacts with the United States as a whole."); *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997) ("[E]ven when a defendant resides within the United States, courts must ensure that requiring a defendant to litigate in plaintiff's chosen forum is not unconstitutionally burdensome."). Because we hold that, for purposes of this case, the Palestinian Authority lacks minimum contacts with the United States as a whole, we express no view on that issue.

n.4. Another purpose is to protect "the sovereign concerns of other nations" whose courts might otherwise adjudicate the claims. *Id.*; *see also Daimler*, 134 S. Ct. at 763 (warning that courts should consider "risks to international comity" before extending jurisdiction). Those considerations weigh at least as heavily in the Fifth Amendment context. In federal and state courts alike, defendants should face suit only under fair circumstances. And just as Fourteenth Amendment personal-jurisdiction standards in many cases govern state courts' power relative to other states' courts (thus raising federalism concerns), Fifth Amendment standards often govern federal courts' power relative to other nations' courts, bringing international-comity concerns to the fore. Because strong justifications for personal-jurisdiction limits apply equally in Fifth Amendment cases, we decline to devise new standards for those cases that are less stringent than those under the Fourteenth Amendment.

Applying consistent personal-jurisdiction standards under the Fifth and Fourteenth Amendments is also easier to administer. Jurisdictional rules should be "'[s]imple,'" "easily ascertainable," and "'predictab[le].'" *Daimler*, 134 S. Ct. at 760 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010)). It is hardly clear what separate Fifth Amendment personal-jurisdiction standards would consist of, and how exactly they would differ from Fourteenth Amendment standards. Without any compelling justification for developing a new personal-jurisdiction doctrine, we decline to send courts and litigants on that journey.

Finally, we disagree that applying the usual personal-jurisdiction doctrine in Fifth Amendment cases will, as the Livnats, Safras, and *amici* suggest, threaten extraterritorial law enforcement. This case concerns personal jurisdiction in civil cases alone; we do not address Congress's

power to legislate extraterritorially or the personal jurisdiction the federal courts have over criminal defendants. Moreover, our holding merely adheres to the status quo of personal-jurisdiction doctrine; we do not diminish any law-enforcement tools that currently exist. In any event, although congressional interests may be relevant to whether personal jurisdiction comports with due-process standards, *cf. Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987) (directing courts to "consider . . . the interests of the forum" as part of the inquiry into "the reasonableness of the exercise of jurisdiction"), they cannot change the standards themselves.

IV

Under the usual due-process standards, the appellants fail to establish personal jurisdiction over the Palestinian Authority in these cases. There are two types of personal jurisdiction, either of which can suffice. The first, general jurisdiction, "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014). Due process permits general jurisdiction based on "only a limited set of affiliations with a forum," all analogous to an individual's domicile. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). For example, the "equivalent place" to a domicile for a corporation—"one in which the corporation is fairly regarded as at home"—can be the place of incorporation or the principal place of business. *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011)).

The appellants do not argue that the Palestinian Authority may be "fairly regarded as at home" in the United States, and for good reason. Its headquarters, officials, and primary activities are all in the West Bank. The Palestinian Authority is

therefore not subject to general jurisdiction in the United States.

The second type of personal jurisdiction, specific jurisdiction, requires an "affiliation between the forum and the underlying controversy." *Walden*, 134 S. Ct. at 1121 n.6 (alteration omitted) (quoting *Goodyear*, 131 S. Ct. at 2851). The appellants' theory of specific jurisdiction is that the attack at Joseph's Tomb was "part of" the "policy and practice" of the Palestinian Authority to "us[e] terrorism to influence United States public opinion and policy," of a piece with the Palestinian Authority's lobbying and fundraising activities inside the United States. Appellants' Br. 45.

We need not reach the legal sufficiency of this theory, because the appellants failed to "make a *prima facie* showing of the pertinent jurisdictional facts" to survive a motion to dismiss for lack of personal jurisdiction. *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). "Conclusory statements" or a "bare allegation of conspiracy or agency" do not satisfy this burden. *Id.* at 1378-79 (citation omitted). When deciding personal jurisdiction without an evidentiary hearing—as here—the "court must resolve factual disputes in favor of the plaintiff," *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004), but it "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts," *id.* (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

In their complaints, the families allege that the attack was "part and parcel of" the Palestinian Authority's "general practice of using terrorism to influence United States public opinion and policy" and was "intended, through intimidation and coercion, to influence the Israeli and United States government's policies." Compl. at 5, 16, *Livnat v. Palestinian*

*Auth.*, No. 1:14-cv-00668 (D.D.C. Apr. 21, 2014); Compl. at 3, 14, *Safra v. Palestinian Auth.*, No. 1:14-cv-00669 (D.D.C. Apr. 21, 2014). But those assertions are conclusory. They merely state the plaintiffs' theory of specific jurisdiction. The Livnats and Safras presented a declaration from a professor asserting that the Palestinian Authority encourages terrorism against Jews and Israelis in order to influence U.S. policy in the Palestinian Authority's favor. Even if true, that evidence establishes no link between that practice and the Joseph's Tomb attack. Indeed, the declaration does not even mention the attack. The families do no more than infer that because some attacks against Jews and Israelis have been aimed to influence U.S. policy, the Joseph's Tomb attack was, too. The record before us does not support that inference. The appellants therefore have not carried their burden to show specific personal jurisdiction.[7]

Finally, the appellants argue in the alternative that the district court should have permitted jurisdictional discovery. We review denials of jurisdictional discovery for abuse of discretion. *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008). A district court acts well within its discretion to deny discovery when no "facts additional discovery could produce . . . would affect [the] jurisdictional analysis." *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994).

---

[7] The appellants also argue that the district court should have deferred its resolution of disputed issues of jurisdictional facts to the merits stage of the litigation. Appellants' Br. 54. We do not reach that argument, however, because we conclude that their evidence, standing alone, does not make a prima facie showing of their personal-jurisdiction theory. They therefore failed to carry their burden regardless of any factual dispute the Palestinian Authority raises.

The district court did not abuse its discretion here, because the additional discovery requested by the appellants would not change our analysis. As to general jurisdiction, the appellants do not even claim that they meet *Daimler*'s "at home" test. As to specific jurisdiction, they failed to link this particular attack to the alleged plan to influence opinion and policy in the United States. But the additional discovery is not directed at that defect. None of the additional facts that the families seek relate to the attack at Joseph's Tomb. Instead, their requested discovery concerns only the Palestinian Authority's general political and financial activities in the United States, such as its lobbying contracts and U.S. investments. *See* Appellants' Br. 56-57. We do not see how any of that information would cure the appellants' failure to tie their jurisdictional theory to the attack at Joseph's Tomb with specific facts.

V

The Livnats and Safras failed to carry their burden of demonstrating that personal jurisdiction over the Palestinian Authority in this case would meet the requirements of the Fifth Amendment's Due Process Clause. We therefore affirm both the district court's denial of the Livnats' and Safras' motions for jurisdictional discovery and its grant of the Palestinian Authority's motions to dismiss for lack of personal jurisdiction.

*So ordered.*