# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

Argued October 7, 2004   Decided December 21, 2004

No. 03-7179

JOHN HELMER,
APPELLANT

v.

ELENA DOLETSKAYA,
APPELLEE

————

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00460)

————

*Bruce S. Marks* argued the cause and filed the briefs for appellant. *John M. Mason* entered an appearance.

*William M. Sullivan, Jr.* argued the cause for appellee. With him on the brief was *Sarah M. Hall*.

Before: ROGERS, TATEL and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This appeal involves personal jurisdiction under the District of Columbia long-arm statute, D.C. Code § 13-423 (2001). John Helmer, a United States citizen, sued his former girlfriend Elena Doletskaya, a Russian citizen, for fraud and breach of contract when she refused to repay him for real and personal property acquired while they lived together in Moscow. The district court dismissed the complaint for lack of personal jurisdiction. *Helmer v. Doletskaya*, 290 F. Supp. 2d. 61 (D.D.C. 2003). We reverse the dismissal of Helmer's contract claim for repayment of credit card charges because the parties formed the contract in the District of Columbia and contemplated future repeated contacts with the District of Columbia as a condition of performance. Otherwise we affirm, as the other contracts had no substantial connection with the District of Columbia, and the fraud did not cause injury in the District of Columbia. In light of our partial reversal, however, the district court may have discretion to exercise pendent personal jurisdiction over the dismissed claims, an issue that was not briefed on appeal, or to dismiss the complaint on other grounds raised in Doletskaya's motion to dismiss, such as forum non conveniens.

**I.**

The facts, based on the pleadings and affidavits construed in the light most favorable to Helmer, are as follows. John Helmer is a citizen of the United States and a resident of the District of Columbia by virtue of his ownership of a home in the District of Columbia, his payment of D.C. taxes, and his possession of a D.C. driver's license. However, he has lived and worked in Moscow as an independent business journalist since 1990. Elena Doletskaya is a citizen of the Russian Federation and a resident of Moscow. In 1993, Helmer and Doletskaya commenced a romantic relationship and lived together in a rented apartment in Moscow. They also began negotiations with a Russian seller to purchase an apartment in Moscow. That

summer, the couple visited Helmer's home in the District of Columbia. While there, Doletskaya agreed to arrange for the purchase of the Moscow apartment in Helmer's name, as Helmer did not speak or read Russian. Doletskaya also agreed to repay Helmer for financially supporting her until her career was established. Such financial support included her use of Helmer's credit cards, on the condition that the monthly billing statements would be sent to Helmer's home address in the District of Columbia.

On November 19, 1993, after the couple returned to Moscow, Doletskaya arranged for the purchase of the Moscow apartment and registered it in her own name. Helmer paid cash for the apartment and received a receipt acknowledging the sale. The couple moved into the Moscow apartment in 1994. In 1996, their romantic relationship ended, and Helmer loaned Doletskaya $11,000 to purchase and renovate a dacha, or country house, in the outskirts of Moscow. Helmer continued to live in the Moscow apartment and to permit Doletskaya to use his credit cards until 2000, when Doletskaya established her financial independence as editor-in-chief of *Vogue Russia*. In 2000, after Doletskaya had moved into the dacha, Helmer discovered that the Moscow apartment was registered in Doletskaya's name. When Doletskaya refused to transfer the apartment to him, Helmer sued her in a Moscow court to recover title to the apartment; his complaint was dismissed on the merits. Doletskaya also refused to repay Helmer $68,000 for his financial support, including $57,000 in credit card charges and $11,000 for the dacha.

On March 15, 2002, Helmer sued Doletskaya in the United States District Court for the District of Columbia for fraud and breach of contract. Count One of the complaint alleged that Doletskaya fraudulently induced Helmer to entrust her with the purchase of the apartment and to lend her financial

support by concealing material facts about her personal background. Count Two alleged that Doletskaya breached her agreement to register the Moscow apartment in Helmer's name and her agreement to repay Helmer for his financial support. Doletskaya moved to dismiss the complaint for lack of service and personal jurisdiction, improper venue, forum non conveniens, and failure to state a claim for fraud. The district court granted the motion to dismiss for lack of personal jurisdiction, finding that the contracts made during the couple's 1993 visit to the District of Columbia did not constitute "minimum contacts" with the District of Columbia, and that the fraud did not cause injury in the District of Columbia, as Helmer was not living there at the time. *Helmer*, 290 F. Supp. 2d at 68-69.

## II.

On appeal, Helmer contends that the district court erred in dismissing the complaint because Doletskaya had sufficient contacts with the District of Columbia to satisfy the requirements of the D.C. long-arm statute and due process. Our standard of review depends on "[t]he posture in which the motion [to dismiss was] presented to trial court." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992). Although the district court permitted jurisdictional discovery, it did not hold an evidentiary hearing and ruled only on the basis of the pleadings and the affidavits, construed in the light most favorable to Helmer. *See Helmer*, 290 F. Supp. 2d at 65 n.1. Accordingly, we review the dismissal of the complaint *de novo*. *See Herbert*, 974 F.2d at 197; 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1351, at 314 (3d ed. 2004).

In a diversity case, the federal district court's personal jurisdiction over the defendant is coextensive with that of a District of Columbia court. *See Crane v. Carr*, 814 F.2d 758,

762 (D.C. Cir. 1987). The District of Columbia long-arm statute provides that a District of Columbia court can exercise personal jurisdiction over a defendant if the claim arises from the defendant's "transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). This provision is "given an expansive interpretation" that is "coextensive with the due process clause." *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981); *see United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995); *Crane*, 814 F.2d at 762. The issue here is whether Doletskaya purposefully established "minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant has minimum contacts with a forum if she enters into a contract that has a "substantial connection" with the forum. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the defendant "purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316 (1943)) (internal quotation marks omitted).

**A.**

The district court ruled that even though the contract for repayment of the credit card charges was formed in the District of Columbia, it had no substantial connection with the District of Columbia because both the charges and the payments were made outside the District of Columbia. *Helmer*, 290 F. Supp. 2d

at 68. Helmer attempts to demonstrate error by the district court based on his Sixth Declaration claiming that the credit card payments were made in the District of Columbia. However, he did not submit his Sixth Declaration until he sought reconsideration of the dismissal by the district court; hence, it was untimely, *see United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993), and we do not consider it.

Helmer also contends that the contract for repayment of the credit card charges had a substantial connection with the District of Columbia because, as alleged in his complaint and his timely declarations, the credit cards were issued to Helmer in the District of Columbia, and the monthly billing statements were sent to Helmer's address in the District of Columbia for the purpose of arranging for Helmer's payment of Doletskaya's charges. According to the complaint, Doletskaya declared that, as a condition of her use of Helmer's credit cards, the monthly billing statements would be sent to Helmer's address in the District of Columbia. Even though the credit card charges were paid from Helmer's bank account located outside the District of Columbia, Doletskaya knew that her continued use of the credit cards depended on the receipt of the statements in the District of Columbia and the arrangement here for payment of the charges. Thus, Doletskaya accepted the credit cards knowing that repeated contacts with the District of Columbia would result from her continued use of the credit cards and Helmer's arrangements for payments of her charges in performance of the contract. Because the contract was formed in the District of Columbia, the corpus of the contract involved credit cards issued to a District of Columbia resident and registered with a District of Columbia address, and the parties contemplated future repeated contacts with the District of Columbia as a condition of performance, we hold that the contract had a substantial connection with the District of Columbia and that Doletskaya

"purposefully avail[ed] [herself] of the . . . benefits and protections of [D.C.] laws," *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)), such that she "should reasonably anticipate being haled into court [here]," *id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Accordingly, we reverse the district court's dismissal of the contract claim for repayment of $57,000 in credit card charges.

The contract to repay Helmer $11,000 for the dacha, however, is a different matter. According to the complaint, Helmer agreed to pay for the dacha in 1996, when both parties were living in Russia. Helmer does not allege that the payments for the dacha were made in the District of Columbia; nor does he allege any other connection between the contract and the District of Columbia, other than his residence here. The Supreme Court has held that a contract with a resident of a forum does not by itself establish minimum contacts with the forum. *Burger King*, 471 U.S. at 478. As such, we affirm the district court's dismissal of the contract claim for repayment of $11,000 for the dacha.

**B.**

Whether the district court has personal jurisdiction over the contract claim for repayment for the Moscow apartment is more problematic, as no relevant authority establishes whether the formation of a contract in the District of Columbia with a D.C. resident is alone sufficient to constitute minimum contacts with the District of Columbia. The district court found that the negotiation, performance, and breach of the contract all occurred outside the District of Columbia. *Helmer*, 290 F. Supp. 2d at 68. The corpus of the contract involved an apartment located in Moscow. And the formation of the contract in the District of Columbia was fortuitous rather than purposeful, as Doletskaya

came with Helmer to the District of Columbia to spend a holiday with Helmer's family, not to solicit business here.

Helmer contends that the contract had a substantial connection with the District of Columbia because it was formed in the District of Columbia and he is a resident of the District of Columbia. However, the cases on which he relies involve more than just the formation of a contract in the District of Columbia. In four of the cases, the contract was partially performed in the District of Columbia, *see Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 6 (D.D.C. 1996); *Abramson v. Wallace*, 706 F. Supp. 1, 2 (D.D.C. 1989); *Clements Distrib. Co. v. Celebrity Prods., Inc.*, 699 F. Supp. 322, 323 (D.D.C. 1988); *Dorothy K. Winston & Co. v. Town Heights Dev., Inc.*, 376 F. Supp. 1214, 1219 (D.D.C. 1974), and in another case, the defendant traveled to the District of Columbia on four occasions for the purpose of negotiating the contract, *see Unidex Sys. Corp. v. Butz Eng'g Corp.*, 406 F. Supp. 899, 902 (D.D.C. 1976). Here, by contrast, the contract to purchase the Moscow apartment was negotiated and performed wholly outside the District of Columbia, and involved only a single, fortuitous contact with the District of Columbia.

Helmer's attempt to distinguish *Freiman v. Lazur*, 925 F. Supp. 14 (D.D.C. 1996), on which the district court relied, *Helmer*, 290 F. Supp. 2d at 68, is unpersuasive. In *Freiman*, the district court ruled that a single meeting in the District of Columbia to negotiate a contract was "insignificant in the scheme of the parties' dealings" because the contract was executed and performed outside the District of Columbia. 925 F. Supp. at 25 (quoting *Mitchell Energy Corp. v. Mary Helen Coal Co.*, 524 F. Supp. 558, 564 (D.D.C. 1981)). In maintaining that his case "differs significantly" from *Freiman*, Helmer relies on the formation of the contract in the District of Columbia and his residence in the District of Columbia. Appellant's Br. at 12.

9

We are not persuaded, however, that the formation of the contract here is more significant "in the scheme of the parties' dealings" than the negotiation meeting in *Freiman*. Both were "single contacts" in courses of dealing that otherwise took place outside the District of Columbia. *Freiman*, 925 F. Supp. at 25; *cf. Burger King*, 471 U.S. at 479; *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003). Indeed, in the choice-of-law context, "the place of contracting standing alone is typically viewed as rather insignificant, especially when it was fortuitous," whereas the "place of negotiation and performance" — in this case, Moscow — "should generally control." *Stephen A. Goldberg Co. v. Remsen Partners, Ltd.*, 170 F.3d 191, 194 (D.C. Cir. 1999) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 188(3), 188 cmt. e (1971)); *see also Allstate Ins. Co. v. Hague*, 449 U.S. 302, 317 n.23 (1981).

Nor are we persuaded that Helmer's maintenance of a residence in the District of Columbia gives the contract to purchase the Moscow apartment a substantial connection with the District of Columbia, as Helmer actually lived and worked in Russia when the contract was negotiated, performed, and breached. The cases Helmer cites, such as *Dorothy K. Winston & Co.*, 376 F. Supp. at 1219, and *Unidex Systems Corp.*, 406 F. Supp. at 900, involved corporations that were not only incorporated in the District of Columbia but actually had offices and did business here, such that the contemplated future consequences of the contracts took place in the District of Columbia. Here, by contrast, although Helmer maintained a home in the District of Columbia and happened to be visiting it when the contract was formed, he actually lived and worked in Russia when the contract was negotiated, performed, and breached, such that the contemplated future consequences of the contract took place in Russia. For these reasons, we hold that Helmer fails to demonstrate that the contract to purchase the

Moscow apartment had a substantial connection with the District of Columbia.

## C.

Finally, we find no merit to Helmer's contention that the district court erred in dismissing his fraud claim. The District of Columbia long-arm statute provides that a court may exercise personal jurisdiction over a defendant if the claim arises from the defendant's "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code § 13-423(a)(3). This provision is "a precise and intentionally restricted tort section which stops short of the outer limits of due process," and requires that both act and injury occur in the District of Columbia. *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986) (quoting *Margoles v. Johns*, 483 F.2d 1212, 1219 (D.C. Cir. 1973); *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1087 (S.D.N.Y. 1984)) (internal citations and quotation marks omitted). The district court ruled that although Doletskaya fraudulently concealed her personal background during her visit to the District of Columbia, the fraud did not cause injury here because Helmer was not "physically present" in the District of Columbia when Doletskaya incurred the credit card charges, when Helmer paid the credit card charges, when Helmer purchased the apartment, or when Doletskaya registered the apartment in her own name. *Helmer*, 290 F. Supp. 2d at 69.

Helmer contends that "economic harm is suffered at the claimant's home, meaning domicile," and that the district court was required to accept his allegation that he was domiciled in the District of Columbia. Appellant's Br. at 16. But Helmer misreads the district court's opinion as ruling that economic injury occurs at the plaintiff's domicile. Noting that Helmer did not "expressly allege emotional losses as a result of Doletskaya's alleged fraud," the district court stated only that

"because Helmer was not actually living in the District [of Columbia] in 2000 when he discovered Doletskaya's alleged fraud, he could not have sustained any *emotional* damage at his home in the District [of Columbia]." *Helmer*, 290 F. Supp. 2d at 69 n.3 (emphasis added). Further, the cases that Helmer cites do not establish that economic injury occurs at the plaintiff's domicile, but only that emotional or reputational injury occurs where the plaintiff lives or works. *See Calder v. Jones*, 465 U.S. 783, 785, 788-89 (1984); *Masterson-Cook v. Criss Bros. Iron Works, Inc.*, 722 F. Supp. 810, 813 (D.D.C. 1989); *Aiken v. Lustine Chevrolet, Inc.*, 392 F. Supp. 883, 886 (D.D.C. 1975). Because Helmer does not allege that the fraud caused emotional injury, we have no occasion to address whether emotional injury occurs at the plaintiff's domicile.

Although District of Columbia law does not establish where economic injury occurs, the case law of other circuits is instructive. For example, in *Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990), a New York resident sued his employer for wrongfully terminating his employment in New Jersey, *id.* at 1045. In determining whether the employer caused tortious injury in New York as required by the New York long-arm statute, the Second Circuit held:

> An injury . . . does not occur within the state simply because the plaintiff is a resident. "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." Thus, despite the fact that [the plaintiff] may suffer the economic consequences of his firing in New York, the location of the original event which caused the injury is New Jersey.

*Id.* at 1046 (first alteration in original) (quoting *Carte v. Parkoff*, 152 A.D.2d 615, 616 (N.Y. App. Div. 1989)) (internal citation omitted). Likewise, in *Wenz v. Memery Crystal*, 55 F.3d 1503 (10th Cir. 1995), a Colorado resident sued a London law firm for wrongfully withdrawing funds from his London trust account, *id.* at 1506. Noting that "the unauthorized disbursals occurred in London and were from a London account, not a Colorado account," the Tenth Circuit held that "the loss or injury occurred in London where the account was located, not in Colorado. That [the plaintiff] may be economically impacted in Colorado, simply because he lives there, is insufficient to establish personal jurisdiction under . . . the Colorado long-arm statute." *Id.* at 1508. Similarly, in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), the Federal Circuit held that the economic injury caused by patent infringement occurs not where the patent owner resides, *id.* at 1570, but "where the infringing sale is made because the patent owner loses business there," *id.* at 1571.

Here, the original events that caused the alleged injury to Helmer were the ones identified by the district court as occurring outside the District of Columbia: Doletskaya's use of the credit cards and Helmer's payment of her charges on them, and the purchase and registration of the Moscow apartment in Doletskaya's name. *Helmer*, 290 F. Supp. 2d at 69. The fact that Helmer was living in Russia when these events occurred makes his contention that the fraud caused injury to him in the District of Columbia even more implausible. Moreover, the district court was not required to accept Helmer's bare allegation that he was domiciled in the District of Columbia, especially because he first made this allegation in his motion for reconsideration. *See United Mine Workers*, 984 F.2d at 476. While a district court must resolve factual disputes in favor of the plaintiff when dismissing a complaint for lack of jurisdiction without an evidentiary hearing, *Reuber v. United States*, 750

F.2d 1039, 1052 (D.C. Cir. 1984), "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Helmer's contention that "merely the intentional direction of tortious conduct into a state is sufficient to confer personal jurisdiction without other contacts" is likewise unpersuasive, Appellant's Br. at 17, as it is based on cases that involve long-arm statutes broader than D.C. Code § 13-423(a)(3), either because they require only the tortious act to occur in the forum state,[1] or because they are coextensive with the Due Process Clause.[2] Because Helmer fails to demonstrate that Doletskaya's fraud caused injury to him in the District of Columbia, we hold that the district court lacked personal jurisdiction over Doletskaya with respect to the fraud claim under D.C. Code § 13-423(a)(3).

Accordingly, we affirm the dismissal of the complaint except with respect to Helmer's contract claim for repayment of credit card charges. Although we do not address the issue of pendent personal jurisdiction because it was not briefed on appeal, on remand the district court may have discretion to exercise such jurisdiction over the dismissed claims, *see Oetiker*

[1] *See FMC Corp. v. Varonos*, 892 F.2d 1308, 1311 (7th Cir. 1990); *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 663 (1st Cir. 1972).

[2] *See Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001); *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001); *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989); *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1066 (4th Cir. 1982).

14

*v. Jurid Werke, G.m.b.h.*, 556 F.2d 1, 4-5 (D.C. Cir. 1977), or it may dismiss the complaint on other grounds raised in Doletskaya's motion to dismiss, such as forum non conveniens.

*So ordered.*