**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
|  | ) |  |
| BRIGHTWELL DISPENSERS LIMITED | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) |  |
|  | ) | Civil Action No. 17-01783 (KBJ/RMM) |
| DONGGUAN ISCE SANITARY WARE | ) |  |
| INDUSTRIAL CO. LTD. et al, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**REPORT AND RECOMMENDATION**

Plaintiff Brightwell Dispensers Limited ("Brightwell") has moved for default judgment against Defendant Dongguan ISCE Sanitary Ware Industrial Co., Ltd. ("Defendant" or "Dongguan"), and that motion is currently pending before the Court.  *See* Pl.'s Mot. for Entry of Default J., ECF No. 7.  On February 12, 2019, the Court issued an order which noted that courts must confirm personal jurisdiction before entering default judgment and directed Brightwell to show cause why the case should not be dismissed for lack of personal jurisdiction.  *See* Show Cause Order, ECF No. 10.  In response to the Court's Show Cause Order, Brightwell filed a brief asserting that the Court has personal jurisdiction over Dongguan.  *See* Pl.'s Resp., ECF No. 11. Having reviewed Brightwell's legal arguments, the pertinent pleadings, and the applicable law, the undersigned recommends that Judge Ketanji B. Jackson find that Brightwell has failed to demonstrate personal jurisdiction in this District.  Accordingly, the undersigned recommends that Judge Jackson DENY the Motion for Default Judgment without prejudice and DISMISS this matter without prejudice.

## BACKGROUND

Brightwell, a United-Kingdom based company, raises patent and trademark infringement claims against Dongguan, a Chinese company, and ten unnamed defendants ("Does 1–10"). *See* Compl. ¶¶ 3–6, ECF No. 1. Dongguan manufactures and sells wall-mounted dispensers through a website accessible by customers in the United States. *See id.* ¶17. Brightwell alleges that at an October 2016 trade show in Chicago, Illinois, Dongguan sold wall-mounted dispensers that infringed on patents owned by Brightwell. *Id.* ¶ 23. Brightwell also contends that these dispensers used a tear-drop trademark that is unique to Brightwell's products. *Id.* Does 1–5 are individuals directly involved with the allegedly infringing products, and Does 6–10 are business entities allegedly involved as associates, collaborators, and suppliers to Dongguan. *See id.* ¶¶ 5–6.

On May 24, 2018, after Dongguan failed to file or respond to any pleadings, Brightwell filed a motion for default judgment against Dongguan. *See* Mot. for Default J., ECF No. 7. The same day, Judge Ketanji B. Jackson referred this matter to the undersigned for full case management. The Court subsequently issued an order directing Brightwell to show cause why this case should not be dismissed for lack of personal jurisdiction. *See* Show Cause Order, ECF No. 10. Brightwell responded to that Order, and both the default judgment motion and the jurisdictional issue are ripe for resolution. *See* Pl.'s Resp.

## LEGAL STANDARD

A court "should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005); *Delta Sigma Theta Sorority, Inc. v. LaMITH Designs, Inc.,* 275 F.R.D. 20, 28 (D.D.C. 2011). When personal jurisdiction is challenged without an evidentiary hearing, a plaintiff must make a *prima facie*

showing that the court has personal jurisdiction. *See Mwani*, 417 F.3d at 7. This burden cannot be satisfied by "conclusory statements." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (citing *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)). Instead, a plaintiff must allege "specific facts" on which to base personal jurisdiction. *Blumenthal v. Drudge,* 992 F. Supp. 44, 53 (D.D.C. 1998). The court resolves factual disputes or discrepancies in favor of the plaintiff, and may "receive and weigh affidavits and other relevant matters to assist in determining the jurisdictional facts." *Bigelow v Garrett*, 299 F. Supp. 3d 34, 41 (D.D.C. 2018). When evaluating personal jurisdiction in the default judgment context, "the absence of the defendants counsels greater flexibility toward the plaintiffs because it impedes their ability to obtain jurisdictional discovery." *Mwani,* 417 F.3d at 7.

Courts may exercise two types of jurisdiction over non-resident defendants: general jurisdiction or specific jurisdiction. General jurisdiction exists only if the non-resident corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlap Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction may be "based on a forum connection unrelated to the underlying suit." *Livnat*, 851 F.3d at 56 (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)). Specific jurisdiction, in contrast, "requires a nexus between a foreign corporation's particular contact with the forum state and the claim that the plaintiff asserts." *Alkanani v. Aegis Defense Servs., LLC*, 976 F. Supp. 2d 13, 21 (D.D.C. 2014); *see also Walden*, 571 U.S. at 291 (noting that specific jurisdiction requires a relationship between "the defendant, the forum, and the litigation") (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984)).

Typically, the jurisdictional reach of a federal court is the same as that of a state court in the state where the federal court sits. *See* FED. R. CIV. P. 4(k)(1)(A). To determine whether general or specific jurisdiction exists, "courts ordinarily decide whether statutory jurisdiction exists under the [forum state's] long-arm statute and, if it does, then . . . whether an exercise of jurisdiction would comport with constitutional limitations." *Ofisi v. Al Shamal Islamic Bank*, 2019 U.S. Dist. LEXIS 44996, *8 (D.D.C. March 19, 2019) (quoting *Forras v. Rauf*, 812 F.3d 1102, 1105 (D.C. Cir. 2016) (internal quotations omitted)); *see also Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, 46 (D.D.C. 2018); *Alkanani*, 956 F. Supp. 2d at 21.

The Due Process Clause of the Constitution requires that "the defendant has sufficient contacts with the forum such that exercising [personal] jurisdiction over the defendant would comport with 'traditional notions of fair play and substantial justice.'" *Alkanani*, 976 F. Supp. 2d at 21 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Thus, the Constitution permits courts to exercise general personal jurisdiction "based on 'only a limited set of affiliations with a forum, all analogous to an individual's domicile.'" *Livnat*, 851 F.3d at 56 (D.C. Cir. 2017) (citing *Daimler*, 571 U.S. at 137). The Constitution limits the exercise of specific personal jurisdiction to situations where "the defendant's suit -related conduct . . . create[s] a substantial connection with the forum state." *Walden*, 571 U.S. at 284.

### DISCUSSION

Brightwell asserts that the Court may exercise general and specific personal jurisdiction over Dongguan based on Dongguan's contacts and business transactions in the District of Columbia ("D.C."). *See* Pl.'s Resp. at 2. Specifically, Brightwell contends that Dongguan's online presence and maintenance of an interactive website accessible by D.C. residents establish both general and specific jurisdiction in this Court. *Id.* at 1–2. To resolve that issue, the Court

4

will evaluate whether Brightwell has alleged facts that demonstrate that Dongguan had sufficient contacts with the District of Columbia to satisfy the requirements of the D.C. long-arm statute and constitutional due process.

## I.        General Jurisdiction

"If a corporate defendant is neither incorporated in nor has its principal place of business in the District of Columbia, the court may exercise general jurisdiction, pursuant to Section 13-334(a) of the D.C. Code, if the corporate defendant is 'doing business in the District.'" *Bey v. Deutsche Bank Nat'l Trust Co.*, No. 18-cv-02515 (TSC), 2019 U.S. Dist. LEXIS 91367, *6–*7 (D.D.C. May 31, 2019). The reach of "doing business" jurisdiction under the statute is coextensive with the reach of constitutional due process. *See Arista Records, Inc. v. Sakfield Holding Co. S.L.*, 314 F. Supp. 2d 27, 31 (D.D.C. 2004) (citing *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510 (D.C. Cir. 2002); *Miller v. Toyota Motor Corp.*, 620 F. Supp. 2d 109, 114 (D.D.C. 2009) (citing *FC Inv. Group LC v. IFX Markets Ltd.*, 529 F.3d 1087, 1092 (D.C. Cir. 2008)). Thus, the question here is whether Dongguan's business contacts with D.C. are sufficiently "continuous and systematic" that Dongguan is "essentially at home" in D.C. *Daimler*, 571 U.S. at 139.

Brightwell asserts that Dongguan is "doing business" in D.C. by operating a website that functions as a storefront in D.C., and that Dongguan's maintenance of its interactive website constitutes the "continuous and systematic" business contacts required to satisfy due process. *See* Pl.'s Resp. at 2. Brightwell supports this contention by attaching screenshots of the Dongguan website to demonstrate that customers may exchange two-way communications with Dongguan, search among Dongguan products, purchase those products, and create an individualized shipping quote on the website. *See* Pl.'s Resp., Ex. 3, Screenshots of Brightwell

Website, ECF No. 11-4.  In addition, Matthew Dwelly, a Brightwell General Manager, submitted a statement noting that Dongguan's physical presence in the United States is limited to trade shows and that Dongguan sold an infringing device to a company in California.  *Id.*, Dwelly Decl. 2, ECF No. 11-2.

Brightwell's arguments rest on the premise that operating and maintaining an interactive website qualifies as "doing business" systematically and continuously in any state where customers can access the website.  To support its position, Brightwell principally cites two D.C. Circuit cases that predate *Goodyear* and *Daimler* — *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008), and *Gorman*, 293 F.3d 506.  In *FC Investment Group*, the Court noted that "[u]nder certain circumstances, a foreign corporation's maintenance of a website that is accessible in the District can satisfy general jurisdiction requirements," provided that the website is "interactive" and "District residents . . . use the website in a 'continuous and systematic' way."  529 F.3d at 1092.  Similarly, in *Gorman*, the Court held that "transactions accomplished through the use of e-mail or interactive websites" could provide a basis for general personal jurisdiction if the defendant's "contacts with the District [were] 'continuous and systematic.'" 293 F.3d at 512.

Brightwell's reliance on *FC Investment Group* and *Gorman* is misplaced for two reasons. First, *Goodyear* and *Daimler* impose an additional requirement that a defendant's contacts must be so extensive that the defendant is "essentially at home" in the forum state, thereby "abrogat[ing] the reasoning" on which *Gorman* and *FC Investment Group* were based.  *Erwin-Simpson v. AirAsia Berhad*, 375 F. Supp. 3d 8, 9 (D.D.C. 2019); *see also Freedman v. Suntrust Banks, Inc.*, 139 F.Supp.3d 271, 280 (D.D.C. 2015) (noting that *Goodyear* and *Daimler* established a more stringent "essentially at home" test than *Gorman*'s "continuous and

systematic" contacts test ); *see also Daimler*, 571 U.S. at 154 (Sotomayor, J., concurring) (noting

Court's departure from prior precedent by "announc[ing] the new rule that in order for a foreign

defendant to be subject to general jurisdiction, it must not only possess continuous and

systematic contacts with a form State, but those contacts must also surpass some unspecified

level when viewed in comparison to the company's 'nationwide and worldwide' activities")

(internal citations omitted).  Second, Brightwell has not alleged facts that meet the lower

standard that the D.C. Circuit applied in *Gorman* and *FC Investment Group*.  In *FC Investment*

*Group*, the court concluded that a foreign corporation's interactive website did not establish

general personal jurisdiction in D.C. because the plaintiff did not demonstrate that a significant

number of D.C- resident customers had ongoing interactions with the company through the

website.  *See* 529 F.3d at 149–50.  In *Gorman*, the court noted that the frequency and volume of

the defendant corporation's online transactions with D.C. residents would determine whether

general personal jurisdiction existed.  *See Gorman*, 293 F.3d at 513.  Here, Brightwell has

alleged that D.C. residents could order products on Dongguan's website but not that any D.C.

residents actually did so.  *See* Pl.'s Resp. at 2, ECF No. 11.  "[T]he mere accessibility of a

defendant's website does not establish the necessary minimum contacts required for general

jurisdiction." *FC Inv. Group*, 529 F.3d at 1092.  Thus Brightwell's allegations demonstrate that

Dongguan's interactive website was accessible by D.C. residents, but do not establish general

jurisdiction.

Turning to the *Daimler* and *Goodyear* standard, Brightwell's allegations fall far short of

demonstrating that D.C. residents continuously and systematically interact with Dongguan's

website to such an extent that Dongguan is "essentially at home" in D.C.  This case is analogous

to *Erwin-Simpson*, where this Court concluded that a foreign airline's maintenance of an

7

interactive website that D.C. residents could access to purchase airfare tickets did not establish general personal jurisdiction in this Court. *See Erwin-Simpson,* 375 F. Supp. 3d at 20 (finding no personal jurisdiction to review claims raised by plaintiffs injured on an AirAsia flight to Cambodia). There, as here, the plaintiffs failed to allege or plead facts demonstrating that D.C. residents had accessed or purchased products on the commercial website. *Id.* at 21; Pl.'s Resp. at 2. Given that the AirAsia website was accessible worldwide, the court found "no basis to infer, based on the mere accessibility of the website, [that] AirAsia is more 'at home' in the District of Columbia than anywhere else in the United States." *Id.*; *see also Nuevos Destinos, LLC v. Peck,* No. 15-cv-1846 (EGS) 2019 U.S. Dist. LEXIS 322 at *41 (D.D.C. Jan. 2, 2019) (holding that a defendant who maintained a website that D.C. residents could access to buy products that would likely end up in D.C. did not have continuous and systematic contacts to render the defendant essentially at home). The same is true here. Consequently, the undersigned recommends that the Court conclude that it lacks general personal jurisdiction to review Brightwell's claims against Dongguan.

## II.     Specific Jurisdiction

Brightwell also alleges that the court may exercise specific jurisdiction over Dongguan because Dongguan is transacting business in D.C. and the trademark infringement claims arise from those transactions. *See* Pl.'s Resp. at 2, ECF No. 11. Brightwell invokes the D.C. long-arm statute, D.C. Code § 13-423(a)(1), which allows courts to exercise specific jurisdiction over a party for claims that arise from a party "transacting any business" in D.C. D.C. CODE § 13–423(a)(1); *Bey,* U.S. Dist. LEXIS 91367 at *10. To establish specific personal jurisdiction under the "transacting business" prong of the long-arm statute, Brightwell must prove:

> "First, that the defendant transacted business in the District of Columbia; second, that the claim arose from the business transacted in D.C.; and third, that the defendant had

8

minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice."

*Alkanani,* 976 F. Supp. 2d at 24 (citing *Brunson v. Kalil & Co.*, 404 F.Supp.2d 221, 227 (D.D.C. 2005)). Section 13-423(a)(1) "provide[s] jurisdiction to the full extent allowed by the Due Process Clause." *Thompson Hine, LLP v. Taieb,* 734 F.3d 1187, 1189 (D.C. Cir. 2013); *see also United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995); *Helmer*, 393 F.3d at 205; *Alkanani*, 976 F. Supp. 2d at 21–22. Consequently, the Court "need only engage in a single analysis of the defendant's contacts with the District under the standards established in the long-arm and service statutes because sufficient contacts under the D.C. Code and proper service is all that Due Process requires." *Id.* (citing *Gorman,* 293 F.3d at 513); *Shoppers Food Warehouse v. Moreno,* 746 A.2d 320, 329–30 (D.C. 2000)); *see also Ferrara*, 54 F.3d at 828 (noting that "the statutory and constitutional questions, which are usually distinct, merge into a single query here"); *Thompson Hine*, 734 F.3d at 1189 (noting that analysis under the Due Process Clause and Section 13-423 "merge into a single inquiry").

### A. Brightwell Has Not Demonstrated that Dongguan Has Transacted Business in D.C.

As noted, determining whether there is an adequate nexus between a defendant's business transactions and the forum to satisfy Section 13-423 requires an analysis of whether the defendant has "minimum contacts" with the forum. Physical presence in the forum is not necessary, but "[r]andom," "fortuitous," or "attenuated" contacts are not enough. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76 (1985) (citations omitted). Instead, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *Hayes v. FM Broad. Station WETT,* 930 F. Supp. 2d 145, 151 (D.D.C. 2013) (holding that

9

plaintiff failed to allege that defendants purposefully availed themselves of the District of Columbia any more than they availed themselves of every other jurisdiction in which their website was accessible) (internal citations omitted); *see also Thompson Hine*, 734 F.3d at 1189.

Although the Supreme Court has written extensively on minimum contacts, it left "questions about virtual contacts for another day." *Walden*, 571 U.S. at 290 n.9.  In that silence, courts have used different approaches to evaluate whether website activity provides the requisite minimum contacts with a forum.  *Zippo Manufacturing Co. v. Zippo Dot Com* established a sliding scale to assess whether a company's online commercial activities confer personal jurisdiction; that scale ranges from situations where a defendant "clearly does business over the internet" to situations where the defendant merely uses a passive website to post information accessible to users in the jurisdiction.  *Zippo Mfg. Co. v. Zippo Dot Com, Inc,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).  For many years, multiple courts across circuits have used *Zippo*'s spectrum of website interactivity to assess a defendant's virtual contacts with a forum.  *See Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1297 (10th Cir. 1999) (citing the *Zippo* standard for "passive" websites to find a corporation's website an insufficient basis for an exercise of personal jurisdiction); *see also ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 713–715 (4th Cir. 2002) (finding no jurisdiction in Maryland because a defendant did not transmit materials on the internet with the intent of engaging in business transactions with Maryland residents); *see generally Gorman*, F.3d at 513 (citing *Zippo* when explaining the additional facts that may demonstrate that personal jurisdiction exists).  However, this Court took a different approach in *Triple Up*, holding that website interactivity is not a "jurisprudential heuristic" for personal jurisdiction and is only relevant to the extent that it illustrates that "the website allows its operator to engage in real-time transactions with District of Columbia

residents." *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 28 (D.D.C. 2017), *aff'd* No. 17-7033 2018 WL 4440459 (D.C. Cir. 2018) (internal citations omitted).  Thus, rather than focusing exclusively on the interactivity of a website, courts must assess whether the website functions as the defendant's "storefront" in the forum and whether the defendant's conduct is aimed at or has an effect in the forum state.  *See id.* at 24.

Brightwell's allegations establish that Dongguan's website is interactive, but do not demonstrate that D.C. residents transacted business on Dongguan's site in a manner sufficient to confer personal jurisdiction.  The website functions in a way that allows D.C. residents to exchange two-way communications with Dongguan, click buttons to receive additional information about products, receive shipping quotes, and purchase goods.  *See* Pl.'s Resp. at 4–5; *see generally id.*, Ex. 3, Screenshots of Dongguan Website, ECF No. 11-4; Compl. ¶ 1.  Thus, it can fairly be described as Dongguan's virtual storefront.  *See Triple Up*, 235 F. Supp. 3d at 28.  However, Brightwell presents no evidence that D.C. residents visited the website or "actually engage[d] in any business transactions with the defendant" as required to establish personal jurisdiction.  *Triple Up,* 2018 WL 4440459, at \*2.  Consequently, Brightwell has failed to "allege specific facts connecting the defendant with the forum . . . [because] personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendant['s] websites" *Hayes,* 930 F. Supp. 2d at 151–52 (quoting *GTE*, 199 F.3d at 1350); *see also Triple Up,* 2018 WL 4440459, at \*2 (noting that website accessibility alone does not demonstrate a defendant's persistent course of conduct in a forum to satisfy personal jurisdiction requirements); *Doe v. Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005) ("A website accessible by computers in the District of Columbia, or by District of Columbia residents, is not purposeful availment; rather it is merely an unavoidable side-effect of modern internet technology.").  The fact that Brightwell

11

has alleged specific contacts with different forums — such as Dongguan's alleged sale of an infringing device, "SunnyCare®," to a distributor in California (Agio Group Inc.,) — makes its omission of similar facts regarding D.C. transactions particularly glaring.  *See* Dwelly Decl. ¶ 5 (discussing Dongguan's alleged transactions).

This case is similar to *Hayes*, where the court found that it lacked personal jurisdiction over a defendant whose website was accessible in D.C. because the plaintiff "alleged only that District residents *can* access the website, not that they actually *do*."  *Hayes,* 930 F. Supp. 2d at 151 (emphasis in original).  In *Hayes*, the defendant operated a website that allowed users to communicate with the defendant's staff, win prizes, and purchase discount tickets.  *Id.* at 147.  The plaintiff's failure to provide evidence that a significant number of D.C. residents accessed and conducted transactions on the defendant's website proved fatal to its efforts to establish personal jurisdiction over the defendant in D.C.  *See id.* at 151–52.  Here, too, Brightwell has alleged only that D.C. residents can access and interact with Dongguan's website, which is insufficient to confer personal jurisdiction under D.C. Code § 13-423(a)(1); *see id.*; *see also Triple Up,* 2018 WL 4440459, at *2; *Doe*, 400 F. Supp. 2d at  121.

The "effects test" articulated in *Calder v. Jones* provides an alternate means of establishing specific personal jurisdiction by assessing whether "the defendant's conduct is aimed at or has an effect in the forum state."  *Triple Up,* 235 F. Supp. 3d at 24 (citing *Calder,* 465 U.S. 783 and *GTE,* 199 F.3d at 1349) (internal citations omitted).  In *Calder*, the Supreme Court observed that "the Defendants' allegedly tortious actions were 'expressly aimed' at California; that [defendants] knew that the article 'would have a potentially devastating impact' on its subject in California, and that under those circumstances, they should have anticipated being haled into court' in that State."  *Ferrara*, 54 F.3d at 828 (citations omitted).  Consequently,

12

the Court held that "the brunt" of the Defendants' conduct was directed towards California and that California courts had personal jurisdiction over the defendant.  *See Calder*, 465 U.S. at 789.

Brightwell has not demonstrated that Dongguan directed its conduct at D.C. or that the alleged infringing conduct had a sufficient effect in D.C. to establish personal jurisdiction under the *Calder* effects test.  Brightwell points to evidence that "North America is listed as one of [Dongguan's] three top markets" according to its website.  Pl.'s Resp. at 5; Screenshots of Dongguan Website; Pl.'s Resp., Grandinetti Decl. ¶ 6, ECF No. 11-5; Dwelly Decl. ¶ 10.  The fact that Dongguan conducts sales on the vast continent of North America does not prove that sales were directed to or have an effect in D.C.  *See Calder*, 465 U.S. at 785, 789 ("The mere fact that [a defendant] can foresee that [a national product] will be circulated and have an effect in [a forum] is not sufficient for an assertion of jurisdiction.") (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980); *see also Kline v. Williams*,  No. 05-01102 (HHK), 2006 WL 758459, at *3 (D.D.C. March 6, 2006) (finding that although D.C. residents could access defamatory online posts, "nationwide jurisdiction" in D.C. was inappropriate because, without evidence of directed harm to D.C., "the injury felt in D.C. was indistinguishable from that felt anywhere [in the nation].") (citing *Mallinckrodt Medical, Inc. v. Sonus Pharm., Inc.*, 989 F.Supp. 265, 273 (D.D.C. 1998).  Similarly, the fact that Dongguan allegedly attended a Chicago trade show does not establish personal jurisdiction in D.C., even if some products sold as a result of the trade show might ultimately be delivered to or used in D.C.  *See* Pl.'s Resp. at 3, ECF No. 11; *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 875, 886 (2011) (concluding that a U.K.-based manufacturer that attended trade shows in various parts of the United States was not subject to personal jurisdiction in a forum state solely because it sold a machine that ended up in

13

the forum and injured someone).[1]  Finally, although Brightwell argues that Dongguan's website "permits" deliveries throughout the United States, including D.C., Brightwell neither proves nor alleges that Dongguan made any deliveries to D.C.  Therefore, Brightwell's allegations do not satisfy *Calder*.

### B.     Brightwell Has Not Demonstrated that Jurisdictional Discovery is Warranted.

Although Brightwell has not demonstrated that Dongguan had sufficient ties to D.C. to establish personal jurisdiction in this Court, jurisdictional discovery might have yielded facts sufficient to meet that burden.  If a plaintiff  "demonstrates that it can supplement its jurisdictional allegations through discovery,  jurisdictional discovery is justified" and should be afforded with the court's discretion.  *GTE*, 199 F.3d at 1351; *Livnat*, 851 F. 3d at 57.  However, a plaintiff must "have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant."  *Fasolyak v. The Cradle Soc'y, Inc.*,  No. 06-cv-1126 (TFH), 2007 WL 20171644, at *10 (D.D.C. July 19, 2007) (citing *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).  Further, "it is inappropriate to subject a defendant to jurisdictional discovery if the plaintiff does not make a detailed showing of how jurisdictional discovery would lead to new, relevant information." *Shaheen v. Smith*, 994 F. Supp. 2d 77, 89 (D.D.C. 2013).

Given that Brightwell has not requested jurisdictional discovery, there is no basis to authorize such discovery.  Brightwell could have asked the Court to permit discovery into Dongguan's contacts with D.C., notwithstanding Dongguan's lack of participation in the case. *See generally Shaheen*, 994 F. Supp. 2d at 81, 89 (considering and rejecting plaintiff's request

---

[1]    Brightwell has not alleged that products sold by Dongguan in California or at a trade fair in Chicago eventually arrived in D.C., so there are even fewer ties to this forum than were present in *Nicastro*.  *See Nicastro,* 564 U.S. at 886.

for jurisdictional discovery in case where defendant had failed to answer the complaint).  Yet, Brightwell failed to do so.  Therefore, the undersigned recommends that the Court decline to authorize jurisdictional discovery.  *See Shaheen*, 994 F. Supp. 2d at 89 (declining to authorize jurisdictional discovery where plaintiff failed to demonstrate that it would be fruitful).

### C.      The Court Need Not Assess the Nexus Between Dongguan's Alleged Contacts with D.C. and the Claims at Issue in This Litigation.

Once a court establishes that a defendant has contacts with D.C., the Court must next determine whether the plaintiff's claims "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Daimler*, 571 U.S. at 127, (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)); *see also Pilkin v. Sony Interactive Entm't, LLC,* No. 17-2501 (RDM), 2019 LEXIS 7697, at *7 (D.D.C. Jan. 16, 2019) (holding that when plaintiff merely alleged that defendant does business in the District of Columbia and did not allege that his claim arose from the business transacted in the District, he failed to allege facts sufficient to establish specific jurisdiction under § 13-423(a)(1)).  Brightwell's failure to demonstrate that Dongguan had sufficient contacts with D.C. makes it unnecessary to analyze the nexus between those contacts and Brightwell's claims.

In sum, the undersigned recommends that the Court find that Brightwell has not provided sufficient facts to show that this Court may exercise specific personal jurisdiction over Dongguan, and that the Court dismiss this action without prejudice. [2]

---

[2]   The Court has discretion to transfer a civil action to any other district where it could have been filed initially, instead of dismissing the action.  *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983); *Baez v. Connelly*, 734 F. Supp. 2d 54, 58 (D.D.C. 2010).  Dongguan's participation in the trade show in Chicago may support personal jurisdiction and venue in the Northern District of Illinois, and Dongguan's alleged sales to Agio Group Inc., a distributor in California, may support personal jurisdiction and venue in a federal district court in California.  However, the record lacks sufficient facts to demonstrate that personal jurisdiction

### III.    Jurisdiction Under Federal Rule of Civil Procedure 4(k)(2).

As noted in the Show Cause Order, Federal Rule of Civil Procedure 4(k)(2) allows courts to exercise personal jurisdiction over foreign defendants who are not subject to the jurisdiction of any court, for claims arising under federal law, if the foreign defendant has been served with a summons, "provided that the exercise of federal jurisdiction is consistent with the Constitution." *See* Show Cause Order at 4; *Mwani*, 417 F.3d at 10; *Citadel Inv. Group, LLC v Citadel Cap. Co.*, 699 F. Supp. 2d 303, 314.  The Court need not analyze the application of Rule 4(k)(2) because Brightwell did not raise jurisdictional arguments under that rule.  *See Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 24 n. 9 (D.D.C. 2015)*, aff'd Livnat,* 851 F.3d at 47 (upholding district court's ruling that a plaintiff forfeited a statutory basis for personal jurisdiction by not raising it).

### RECOMMENDATION

For the reasons set forth above, the undersigned recommends that Judge Ketanji B. Jackson find that this Court lacks personal jurisdiction over Dongguan, **DENY** the motion for default judgment without prejudice, and **DISMISS** the matter for want of jurisdiction, without prejudice.

### REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to this Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made,

---

and venue would be proper in either Illinois or California.  Therefore the undersigned recommends dismissal instead of transfer.

and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  October 9, 2019                                   
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE